UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ESTHER STEIN,

                Plaintiff,

      v.                                   Civ. No. 12-cv-4739 (JPO) (JLC)

GUARDSMARK, LLC, and IRA A.
LIPMAN, individually,

                Defendants.
_____

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56**

**HARRIS BEACH PLLC**

Scott D. Piper
Kyle W. Sturgess (admitted *pro hac vice*)
*Attorneys for Defendants*
99 Garnsey Road
Pittsford, NY  14534
(585) 419-8800
(585) 419-8817 (fax)
spiper@harrisbeach.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT        THE STANDARD FOR SUMMARY JUDGMENT ........................................ 2

POINT I        THE DEFENDANTS ARE ENTITLED TO SUMMARY
               JUDGMENT WITH RESPECT TO THE PLAINTIFF'S
               OVERTIME CLAIMS BECAUSE THE PLAINTIFF FELL
               UNDER THE ............................................................................................ 3

        A.     The Plaintiff Was Compensated On A Salary Basis .......................... 3

        B.     The Plaintiff Earned The Requisite Salary To Qualify For The
               "Highly-Compensated Employee" Exemption .................................... 5

        C.     The Plaintiff Performed One Or More Administrative Duties
               As Required By The "Highly-Compensated Employee"
               Analysis ............................................................................................... 7

POINT II       THE DEFENDANTS ARE ENTITLED TO SUMMARY
               JUDGMENT WITH RESPECT TO THE PLAINTIFF'S
               OVERTIME    CLAIMS,   BECAUSE    GUARDSMARK
               PROPERLY APPLIED THE FLUCTUATING WORK WEEK .................. 12

        A.     The Plaintiff's Hours Fluctuated From Week To Week .................. 14

        B.     The Plaintiff And Guardsmark Had A "Clear And Mutual
               Understanding" Of The Nature Of Her Compensation .................... 14

        C.     Under The Fluctuating Work Week Method, The Plaintiff's
               Hourly Rate Was Never Less Than The Applicable Minimum
               Wage .................................................................................................. 17

POINT III      THE DEFENDANTS ARE ENTITLED TO SUMMARY
               JUDGMENT WITH RESPECT TO THE PLAINTIFF'S
               NYLL CLAIM, BECAUSE THE FLSA AND NYLL ARE
               FOR   ALL   RELEVANT   PURPOSES   IDENTICALLY
               ANALYZED ........................................................................................ 19

POINT IV    THE  COURT  SHOULD  DECLINE  TO  EXERCISE
            SUPPLEMENTAL        JURISDICTION        OVER        THE
            PLAINTIFF'S STATE-LAW CLAIMS ..........................................................20

POINT V     THE PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT
            SHOULD BE DISMISSED INSOFAR AS SHE WAS AN AT-
            WILL  EMPLOYEE  AND  ANY  CLAIM  FOR  BREACH  IS
            DUPLICATIVE OF HER STATUTORY CLAIMS ......................................21

CONCLUSION ....................................................................................................................23

## TABLE OF AUTHORITIES

Page

**Cases**

Adams v. Niagara Mohawk Power Corp.,
 Civ. No. 02-cv-1353; 2008 WL 4527694 (N.D.N.Y., Sep. 30, 2008)........................ 4

Altemus v. Federal Realty Investment Trust, Civ. No. 11-2213;
 2012 WL 3090915 (4th Cir., July 9, 2012)........................................................... 8, 11

Amendola v. Bristol-Myers Squibb Co., 558 F.Supp.2d 459 (S.D.N.Y. 2008) ............................ 9

Anani v. CVS RX Services, Inc., 788 F.Supp.2d 55 (E.D.N.Y. 2011).......................................... 4

Anderson v. IKON Office Solutions, Inc., 38 A.D.3d 317 (1st Dep't 2007) .............................. 20

Bailey v. County of Georgetown, 94 F.3d 152 (4th Cir. 1996) ................................................... 15

Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217 (2d Cir. 2002) ................................... 21

Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988)........................................................ 21

Castro v. Metropolitan Transp. Authority, Civ. No. 04-cv-1445;
 2006 WL 1418585 (S.D.N.Y., May 23, 2006) ....................................................... 4

Cooke v. General Dynamics Corp., 993 F.Supp. 50 (D.Conn. 1997)............................................. 4

Coppage v. Bradshaw, 665 F.Supp.2d 1361 (N.D.Ga. 2009)......................................................... 9

Counts v. South Carolina Electric & Gas Co., 317 F.3d 453 (4th Cir. 2003)........................... 6, 12

Day An Zhang v. L.G. Apparel, Inc., Civ. No. 09-cv-3240;
 2011 WL 900183 (E.D.N.Y., Feb. 18, 2011)........................................................ 21

Duarte v. Tri-State Physical Medicine & Rehabilitation, P.C.,
 Civ. No. 11-cv-3765; 2012 WL 2847741 (S.D.N.Y., July 11, 2012)...................... 2

Ellis v. Common Wealth Worldwide Chauffeured Transportation of NY, LLC,
 Civ. No. 10-cv-1741; 2012 WL 1004848, (E.D.N.Y., Mar. 23, 2012)................. 19, 22, 23

Flood v. New Hanover County, 125 F.3d 249 (4th Cir. 1997) .................................................. 14

Fry v. McCall, 945 F.Supp. 655 (S.D.N.Y. 1996) ..................................................................... 22

Garcia v. Port Royale Trading Company, 198 F.App'x. 845 (11th Cir. 2006) ..................... 16, 17

Kadden v. VisuaLex, LLC, Civ. No. 11-cv-4892;
    2012 WL 4354781 (S.D.N.Y., Sep. 24, 2012)........................................................... 4

Krause v. Merrill Lynch, Civ. No. 10-cv-2603;
    2011 WL 1453791 (S.D.N.Y., Apr. 13, 2011)........................................................ 19

Krichman v. J.P. Morgan Chase & Co., Civ. No. 06-cv-15305;
    2008 WL 5148769 (S.D.N.Y. Dec. 8, 2008) ........................................................ 23

Krumholz v. Village of Northport, Civ. No. 09-cv-4277;
    2012 WL 2775029 (E.D.N.Y., July 10, 2012) ...................................................... 2

Lance v. The Scotts Company, Civ. No. 04-cv-5270,
    2005 WL 1785315 (N.D.Ill. July 21, 2005)......................................................... 15

Mayhew v. Wells, 125 F.3d 216 (4th Cir. 1997) ....................................................... 16

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007)............................ 3

Monahan v. County of Chesterfield, 95 F.3d 1263 (4th Cir. 1996)............................ 16

Murray v. Northrop Gruman Information Tech, Inc.,
    444 F.3d 169 (2d Cir. 2006)................................................................................ 23

R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69 (2d Cir. 1984) ........................ 2

Rooney v. Tyson, 91 N.Y.2d 685 (N.Y. 1998) ........................................................ 22

Samson v. Apollo Resources, Inc., 242 F.3d 629 (5th Cir. 2001) ............................ 15

Scholtisek v. Eldre Corp., 697 F.Supp.2d 445 (W.D.N.Y. 2010)............................. 20

Seltzer v. Dresdner Kleinwort Wasserstein, Inc.,
    356 F.Supp.2d 288 (S.D.N.Y. 2005)................................................... 6, 8, 11, 12

Tops Market, Inc. v. Quality Markets, 142 F.3d 90 (2d Cir. 1998)............................ 21

Valerio v. Putnam Assoc. Incorporated, 173 F.3d 35 (1st Cir. 1999) .................... 15, 16

Zubair v. EnTech Engineering P.C., 808 F.Supp.2d 592 (S.D.N.Y. 2011) ................. 20

**Statutes**

28 U.S.C. §1367 .................................................................................................... 20

29 U.S.C. §201 ...................................................................................................... 1

29 U.S.C. §201(a)(1)(c) ........................................................................................ 18

N.Y. Lab. Law §650 ............................................................................................. 1

**Other Authorities**

69 Fed.Reg. 22173 (Apr. 23, 2004) ...................................................................... 6

69 Fed.Reg. 22174 (Apr. 23, 2004) ...................................................................... 6, 10

Department of Labor, Wage and Hour Division Field Operations Handbook,
    §32b04b(c) ...................................................................................................... 17

Department of Labor, Wage and Hour Division Opinion Letter
    FLSA 2004-4NA (May 13, 2004) .................................................................. 4

Department of Labor, Wage and Hour Division Opinion Letter
    FLSA 2006-23NA (Oct. 26, 2006) ................................................................ 9, 11

Department of Labor, Wage and Hour Division Opinion Letter,
    1992 WL 845098 (Aug. 20, 1992) ................................................................. 11

Department of Labor, Wage and Hour Division,  Report and Recommendations on Proposed
    Revisions or Regulations, Part 541, Defining the Terms "Executive," "Administrative,"
    "Professional," "Local Retailing Capacity," [and] "Outside Salesman" (Washington: U.S.
    Govt. Print. Off., 1949) [the "1949 Weiss Report"] ...................................... 10

**Rules**

12 NYCRR §142-2.1(a)(5) .................................................................................... 18

12 NYCRR §142-2.2 ............................................................................................. 19

29 C.F.R. §541.200 ............................................................................................... 7

29 C.F.R. §541.200(a)(1) ...................................................................................... 3

29 C.F.R. §541.200(a)(2) ...................................................................................... 8, 9

29 C.F.R. §541.200(a)(3) ............................................................................... 9

29 C.F.R. §541.203(d) ................................................................................... 8

29 C.F.R. §541.601 ...................................................................................... 11

29 C.F.R. §541.601(a) ............................................................................... 5, 9

29 C.F.R. §541.601(b)(1) ............................................................................... 6

29 C.F.R. §541.601(b)(3) ............................................................................... 7

29 C.F.R. §541.601(c) ..................................................................................... 5

29 C.F.R. §541.602 ......................................................................................... 4

29 C.F.R. §541.602(a) ..................................................................................... 4

29 C.F.R. §541.602(b)(6) .......................................................................... 5, 17

29 C.F.R. §541.604(a) ..................................................................................... 4

29 C.F.R. §778.114(a) ................................................................................... 13

29 C.F.R. §778.114(b) ................................................................................... 13

29 C.F.R. §778.114(c) ............................................................................. 13, 15

Fed.R.Civ.Proc. 56(a) ..................................................................................... 2

Fed.R.Civ.Proc. 56(c)(1) ................................................................................ 2

Local Rule 56.1 of the Local Rules for the Southern District of New York ................................. 1

## PRELIMINARY STATEMENT

The Defendants Guardsmark, LLC ("Guardsmark") and Ira A. Lipman ("Mr. Lipman"; collectively with Guardsmark, the "Defendants"), by and through their attorneys, Harris Beach PLLC, submit this Memorandum of Law in support of their Motion for Summary Judgment, filed on or about February 25, 2013, seeking the dismissal of the Plaintiff, Esther Stein's (the "Plaintiff") Complaint, on the grounds that the Plaintiff was exempt from the overtime wage requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*., and the New York State Minimum Wage Law ("NYLL"), N.Y. Lab. Law §650 *et seq*.; and/or that the Plaintiff was properly paid all of the overtime compensation to which she was entitled under the "fluctuating work week" method of overtime payment.  The Defendants further seek the dismissal of the Plaintiff's common-law breach of contract claims on the ground that, as a matter of law, they are duplicative of her statutory claims and cannot create an independent basis for recovery.

The relevant material facts and circumstances underlying the instant Motion have been set forth at length in the Defendants' Statement of Material Facts (submitted pursuant to Local Rule 56.1 of the Local Rules for the Southern District of New York); the Affidavits of Ramona Martin, Jason Mayse, Gareth C. Leviton, Esq., and Dr. Robert Overman, sworn to on or about February 21, 2013, respectively; and all of the Exhibits and papers annexed thereto, and consequently, in the interest of brevity, will not be repeated at length here.

In brief, the Defendants submit that there is no material issue of fact with regard to the Plaintiff's satisfaction of each element of the test for the "highly-compensated employee" exemption under the FLSA, and was accordingly exempt from the overtime-wage requirements of that statute.  In addition (and in the alternative), the undisputed facts demonstrate that the Plaintiff was properly paid all of the compensation to which she was entitled under the

fluctuating work week method of overtime payment.  Consequently, as a matter of law, the Defendants are entitled to summary judgment on each and every one of the Plaintiff's claims that originate with any alleged failure to pay the Plaintiff overtime wages.  Her breach of contract claim, meanwhile, is duplicative of her statutory causes of action and cannot be sustained as an independent basis for recovery.

## ARGUMENT

## THE STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is well-known and applies to FLSA actions which—despite the factual complexity that can sometimes accompany large-scale collective actions—are as amenable as other types of actions to early disposition.  Krumholz v. Village of Northport, Civ. No. 09-cv-4277; 2012 WL 2775029, at **4-5 (E.D.N.Y., July 10, 2012) (granting summary judgment for defendant in a FLSA case).  Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.PROC. 56(a).  Such a showing places the burden on the movant to demonstrate that the record establishes the absence of a genuine dispute as to any fact material to the resolution of the dispute; and/or to show that the non-moving party "cannot produce admissible evidence to support the fact." Krumholz, supra, 2012 WL 2775029, at *4 (quoting FED.R.CIV.PROC. 56(c)(1)).  Placing this burden on the movant, however, does not entitle the non-moving party to rest on "conclusory allegations or denials" or even the showing of "the mere existence of some alleged factual dispute"; rather, the non-moving party must set forth "concrete particulars" by reference to the record, that show a material dispute requiring a trial. Krumholz, supra, 2012 WL 2775029, at *4 (citing R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984)); Duarte v. Tri-State Physical Medicine & Rehabilitation, P.C., Civ. No. 11-cv-3765; 2012 WL 2847741, at **4-5 (S.D.N.Y., July 11, 2012) (observing that a

fact is "material" when "it might affect the outcome of the suit under governing law") (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)).

Because the resolution of three issues—(1) the Plaintiff's salary basis of payment and salary level of over $100,000 annually; (2) the Plaintiff's performance of at least one "administrative" duty; and/or (3) the Defendants' proper payment to the Plaintiff of overtime compensation via the "fluctuating work week" method of overtime payment—are all that is needed to dispose of the instant claims (indeed, between those three issues, the instant case may be disposed of on one or both of *two* alternative grounds), and are ascertainable on the record already developed via the Defendants' Motion, the instant case is ripe for adjudication in accordance with the standards and principles discussed above.

## POINT I

### THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE PLAINTIFF'S OVERTIME CLAIMS BECAUSE THE PLAINTIFF FELL UNDER THE "HIGHLY-COMPENSATED EMPLOYEE" EXEMPTION TO THE FLSA.

The facts and circumstances set forth in the Defendants' Statement of Material Facts demonstrate unequivocally that the Plaintiff (1) received total compensation of more than $100,000 per year; and (2) performed "administrative" duties within the meaning of the FLSA. Because this qualifies the Plaintiff for exemption from the FLSA under the "highly-compensated employee" exemption set forth in the FLSA's implementing regulations, the Plaintiff was not entitled to overtime compensation, and her claims based thereupon must correspondingly be dismissed.

### A.    The Plaintiff Was Compensated On A Salary Basis.

Application of the "highly-compensated" employee exemption requires first that the employee in question be compensated on a "salary basis" pursuant to 29 C.F.R. §§541.200(a)(1)

and 541.602.  Under the "salary basis" test, a would-be exempt employee must be paid "on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or the quantity of the work performed."  29 C.F.R. §541.602(a).  A salaried employee's exempt status is absolutely *not* "lost," however, merely because the employer, at its own discretion, elects to provide the employee additional forms of compensation beyond the salary, *including the payment of overtime*.  29 C.F.R. §541.604(a); see also Anani v. CVS RX Services, Inc., 788 F.Supp.2d 55, 60 (E.D.N.Y. 2011) (pharmacist was an exempt "professional" employee notwithstanding his employer's payment of "premium" pay for hours worked in excess of 44 per week); Adams v. Niagara Mohawk Power Corp., Civ. No. 02-cv-1353; 2008 WL 4527694, at *6 (N.D.N.Y., Sep. 30, 2008) ("courts have consistently held that an employee's receipt of additional amounts, including overtime, above his predetermined base compensation does not destroy the employee's otherwise valid salary status"); Kadden v. VisuaLex, LLC, Civ. No. 11-cv-4892; 2012 WL 4354781, at fn.82 (S.D.N.Y., Sep. 24, 2012); Castro v. Metropolitan Transp. Authority, Civ. No. 04-cv-1445; 2006 WL 1418585, at fn.12 (S.D.N.Y., May 23, 2006).  In a related vein, neither is the employee's salaried status "lost" simply because the employee is required to track their working hours with timesheets, "sign in" or "sign out," or engage in any practices commonly associated with hourly-pay systems.  See, e.g., Department of Labor, Wage and Hour Division Opinion Letter FLSA 2004-4NA (May 13, 2004) (exempt employees could be required to work certain hours; to "clock in" and "clock out" of work on their computers; maintain accurate time sheets demonstrating how much they worked each day; provide their management with a daily schedule of their hours); see also Cooke v. General Dynamics Corp., 993 F.Supp. 50, 51 (D.Conn. 1997) (exempt employees could be required to work forty hours per

week and "make up" missed hours with accrued paid benefit time such as sick leave, vacation or personal leave).

Under any scenario whatsoever, the Plaintiff was indisputably paid on a "salary basis" and passes the first step of the test for exemption.  For the entirety of her working tenure, the Plaintiff received the same base salary, week in and week out—$4,230.76 every two weeks— irrespective of how much or how little she actually worked in the course of the week.  <u>See generally</u> SMF at Ex. G and H; Martin Aff. at ¶¶8-9.  (The Plaintiff's first paycheck, covering her first two weeks of employment, reveals a slightly lesser amount of $3,384.61—reflective of the FLSA's regulatory provision that during an "initial" or "terminal" week of employment, an employer "may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment."  <u>See</u> 29 C.F.R. §541.602(b)(6).)  This requirement being indisputably met, the appropriate inquiry becomes whether the Plaintiff meets the dual prongs of the test for exemption from the FLSA under the "highly compensated employee" exemption: a point addressed in detail below.

**B.**     **The Plaintiff Earned The Requisite Salary To Qualify For The "Highly-Compensated Employee" Exemption.**

The "highly compensated employee" exemption provides that "an employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the [FLSA]…if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee."  29 C.F.R. §541.601(a).  The rationale underlying this "short" test for the so-called white-collar exemptions is observed in the United States Department of Labor's ("DOL") assessment that "[a] high level of compensation is a strong indicator or an employee's exempt status, thus eliminating the need for a detailed employee's job duties."  <u>Id.</u> at §541.601(c); <u>see also</u> 69 Fed.Reg. 22173-74

(Apr. 23, 2004) (discussing the DOL's authority to adopt a "short-cut" test for employee exemption and the agency's reasons for doing so). The test is thus reflective of a recognition that the FLSA is "meant to protect low paid rank and file employees, not higher salaried managerial and administrative employees who are seldom the victims of substandard working conditions and low wages." Counts v. South Carolina Electric & Gas Co., 317 F.3d 453, 456 (4th Cir. 2003); see also Seltzer v. Dresdner Kleinwort Wasserstein, Inc., 356 F.Supp.2d 288, 302 (S.D.N.Y. 2005) ("The FLSA is intended to help employees who have little or no bargaining power and who need protection against oppressive work hours....*It was not intended to help someone...earning some $120,000 a year as the executive assistant to the president* of a substantial investment banking firm") (internal citations omitted; emphasis added).

The test thus permits the assessment of certain employees' exempt status to be boiled down to two simple inquiries: (1) whether the employee's total annual compensation amounts to $100,000 or more per year; and (2) whether the employee "customarily and regularly" performs managerial, professional, or (as in this case) administrative duties. Because it is indisputable that the Plaintiff earned $110,000 per year while performing administrative duties, she meets the requirements of this test for exemption from the FLSA, and consequently has no basis for any claim for overtime payment.

"Total annual compensation" under the highly-compensated employee exemption "must include at least $455 per week paid on a salary or fee basis," see 29 C.F.R. §541.601(b)(1), but may also include "commissions, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period." Id. To the extent that the employee in question does not work a full calendar year, the highly-compensated employee exemption is still applied to an employee if the $100,000 annual compensation requirement is met on a *pro rata* basis,

"based upon the number of weeks that the employee has been or will be employed." Id. at §541.601(b)(3).

There is no debate in this instance that the Plaintiff meets the total annual compensation requirement of the highly-compensated employee exemption. The Plaintiff's offer letter from Guardsmark expressly identifies her annual salary as $110,000, payable bi-weekly, and subject to performance raises upon review, and this was indisputably the salary that the Plaintiff was *actually paid* during her tenure at Guardsmark. SMF at ¶¶7, 28; Ex. A, G and H. Her payroll data illustrates that the compensation was plainly paid, moreover, on the requisite salary basis, the Plaintiff receiving the same $4,233.72 bi-weekly (or $2,115.36 weekly), irrespective of the number of hours she worked in any pay period (whether more or less than forty). SMF at Ex. G. For the two calendar years of her employment in which the Plaintiff worked only a partial year (2008, when she joined Guardsmark; and 2011, when her employment ceased), the same payroll data reveals that the Plaintiff earned $54,483.54 in salary during six months and twelve days of employment in 2008 and $77,402.92 in salary during eight months of employment in 2011, putting her on track to earn her full salary for those years as well, and satisfying the *pro rata* requirement of the relevant regulation. SMF at ¶28. Put simply, the Plaintiff's satisfaction of the first prong of the highly-compensated employee test is not subject to any question of material fact. The Defendants' entitlement to summary judgment, therefore, can be established by a showing that the Plaintiff similarly meets the requirements of the second prong of the test.

**C.    The Plaintiff Performed One Or More Administrative Duties As Required By The "Highly-Compensated Employee" Analysis.**

"Administrative duties" for purposes of the highly-compensated employee test (as well as the broader "administrative employee exemption") are described generally in the FLSA's implementing regulations at 29 C.F.R. §541.200: such duties involve "the performance of office

or non-manual work directly related to the management or general business operations of the employer or the employer's customers[.]"   29 C.F.R. §541.200(a)(2).   Case authority and guidance from the DOL offer numerous examples of the type of tasks commonly performed by executive secretaries and executive assistants like the Plaintiff, that fall within the scope of this subsection.   Indeed, *the FLSA's regulations themselves* provide that "[a]n executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets" the administrative duties requirement.[1]   29 C.F.R. §541.203(d).   In Seltzer, the plaintiff— an executive assistant to the President and Managing Director of an investment banking firm— performed these types of duties where, *inter alia*, she arranged the President's travel, managing his checking account, answered the telephone and completed expense reports.   Seltzer, supra, 356 F.Supp.2d at 292.   In Altemus v. Federal Realty Investment Trust, Civ. No. 11-2213; 2012 WL 3090915, at *1 (4th Cir., July 9, 2012), the list of an executive assistant's tasks expanded to include:

> Manag[ing] the day-to-day business activities of [the] CEO;
> demonstrat[ing] the ability to handle confidential information with
> discretion; prioritiz[ing] and handl[ing] internal and external
> correspondence; screen[ing] incoming calls in the most
> professional manner; schedul[ing] meetings and maintain[ing]
> daily and long-term calendar…creat[ing] and maintain[ing] a
> comprehensive filing system; [and] handl[ing] all incoming and
> outgoing mail.

Altemus, 2012 WL 3090915, at *1.   The court concluded that this plaintiff's tasks concerned the management of the defendant company, and qualified the plaintiff for the administrative exemption (notwithstanding the fact that the employee complained that her boss "often micromanaged tasks and took control of even the most basic decision making of those tasks"). Id. at *2.   See also Department of Labor, Wage and Hour Division Opinion Letter FLSA 2006-

---

[1] This is even *before* considering that the highly-compensated employee exemption eliminates the "discretion and independent judgment" requirement—a matter discussed in depth infra.

23NA (Oct. 26, 2006) (an FLSA-exempt executive assistant to a labor union president performed tasks that included maintaining her boss' calendar and itinerary; monitoring letters, phone calls and emails to her boss; directed phone calls and letter inquiries to other union staff; handled travel arrangements; scheduled and coordinated meetings; and typed dictated materials).

Notably, however, the "administrative duties" analysis—when applied in the context of the highly-compensated employee exemption—is greatly pared down, in that (1) the administrative duties being performed need not be the highly-compensated employee's primary duty and, indeed, the employee in question need perform only *one* administrative duty; and (2) the highly-compensated employee need not exercise "discretion and independent judgment" in the course of fulfilling her duties.  See 29 C.F.R. §§541.200(a)(2)-(3).  The plain language of the highly-compensated exemption requires that the employee in question need perform only one administrative duty; see 29 C.F.R. §541.601(a); and case law makes plain that if that *one* such duty is indeed performed, the "discretion and independent judgment" typically required of an administrative employee need not be present.  See, e.g., Amendola v. Bristol-Myers Squibb Co., 558 F.Supp.2d 459, 478 (S.D.N.Y. 2008) ("Among other things, th[e highly-compensated employee] exemption removes any requirement that an employer prove that an administrative employee exercised discretion in the performance of her duties"); Coppage v. Bradshaw, 665 F.Supp.2d 1361, 1368-69 (N.D.Ga. 2009).  The Department of Labor has embraced this relaxed standard of analysis because, in its own view:

> …[V]irtually every salaried "white collar" employee with a total annual compensation of $100,000 per year would satisfy any duties test.  Employees earning $100,000 or more per year are at the very top of today's economic ladder, and setting the highly compensated test at this salary level provides the Department with the confidence that, in the words of the Weiss report: "*in the rare instances when those employees do not meet all other requirements of the regulations, a determination that such employees are exempt would not defeat the objectives of section 13*(a)(1) of the Act."

9

69 Fed.Reg. 22174 (Apr. 23, 2004) (<u>citing</u> Department of Labor, Wage and Hour Division, <u>Report and Recommendations on Proposed Revisions or Regulations, Part 541, Defining the Terms "Executive," "Administrative," "Professional," "Local Retailing Capacity," [and] "Outside Salesman"</u> (Washington: U.S. Govt. Print. Off., 1949) [the "1949 Weiss Report"], at 22-23) (emphasis added).

Under this relaxed standard of analysis there is no dispute that the Plaintiff regularly and customarily performed at least one (and, indeed, more than one) administrative duty, despite the Plaintiff's anticipated dismissal of her responsibilities—responsibilities meriting a six-figure salary—as "clerical." Her Complaint *alone* details that her duties included "opening and sorting mail and other deliveries, filing, dictation, correspondence, answering and making telephone calls, calendaring events, as well as various other secretarial *and administrative duties*." SMF at Ex. I at ¶19 (emphasis added). The Plaintiff made herself indispensable to the ability of the President of an international company to oversee and direct his company, managing mail and phone communications between the President and his own corporate officers, as well as outside callers including political figures, clients and potential clients, philanthropic interests, and solicitors; keeping "logs" or records of communications and correspondence and updating the status of those communications as they were responded to by the President; maintaining daily schedules and schedules of visitors to the office and tracking changes to the same; updating calendars and itineraries; preparing administrative materials for the conduct of once-monthly "President's Meetings"; filing all manner of records for her boss; and generally facilitating Mr. Lipman's ability to navigate myriad demands on his time and operate his company with a level of detail-orientation that might otherwise have been impossible. SMF at ¶¶30-31, 36-61; Ex. J. The Plaintiff performed a "gatekeeping" function, regulating access to Mr. Lipman and routing

10

incoming communications around the company in ways that facilitated management and decision-making by the most appropriate individuals and departments.  SMF at ¶55; Overman Aff. at 14-24.  She also acted as an information "filter" for the President, distilling the most important elements of the correspondence he received and making judgments as to which matters needed to be handled immediately and personally by Mr. Lipman, or else determining how and when to bring the remaining matters to his attention.  SMF at ¶¶50-60.

The Plaintiff's own document detailing her duties demonstrates the "customary and routine" nature of these functions, categorizing the vast majority of her various tasks as "daily" or "weekly."  SMF at Ex. J.  Indeed, the long working hours that now form the basis for the Plaintiff's overtime claims—including her routine presence at Mr. Lipman's home office (in his personal residence) and late-evening departures from Guardsmark's Rockefeller Center offices, were a function of the degree to which her assistance was deemed an absolute necessity to the smooth operation of Mr. Lipman's management over his company.  SMF at ¶¶30-34; see also Overman Aff. at ¶¶14-27.  These duties, which align neatly with many of the duties described in the authorities above such as Seltzer and Altemus, are patently exemplary of "office…work directly related to the management or general business operations of the employer"—see Department of Labor, Wage and Hour Division Opinion Letter FLSA 2006-23NA (Oct. 26, 2006) and Department of Labor, Wage and Hour Division Opinion Letter, 1992 WL 845098 (Aug. 20, 1992)—and consequently leave no doubt that the Plaintiff performed "administrative" duties within the definition of the FLSA for purposes of applying the highly-compensated employee analysis.

The terms and conditions of the Plaintiff's employment therefore satisfy *both* of the requirements for the application of the highly-compensated employee exemption set forth in 29 C.F.R. §541.601.  The Plaintiff, moreover, was plainly in a class of employees described by the

policy considerations voiced in <u>Seltzer</u>, <u>Counts</u>, and the Department of Labor's own commentary: a white-collar worker commanding a six-figure salary that was further augmented by Guardsmark's voluntary payment of overtime, amounting to tens of thousands of additional dollars per year, not a low-wage earner whose fiscal interests could easily be compromised by her employer without the most rigid enforcement of the FLSA.  In the face of these facts, there remains no material factual basis for any dispute as to the Defendants' entitlement to summary judgment as a matter of law.

### POINT II

**THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE PLAINTIFF'S OVERTIME CLAIMS, BECAUSE GUARDSMARK PROPERLY APPLIED THE FLUCTUATING WORK WEEK" METHOD OF OVERTIME COMPENSATION TO THE PLAINTIFF'S PAY.**

Even if the Plaintiff were not exempt from the overtime provisions of the FLSA by virtue of her status as a "highly-compensated employee," however, the Defendants would still be entitled to summary judgment by virtue of the undisputed fact that the Defendant correctly paid the Plaintiff all of the overtime to which she was due[2] under the "fluctuating work week" ("FWW") method of overtime payment.

The FWW method of payment discussed in the FLSA's implementing regulations and accompanying guidance, permits payment of an employee on a salary basis so that the salary covers all of the employee's *straight-time* hours during the week, if three criteria are met: (1) the employee's hours fluctuate from week to week; (2) there is a "clear and mutual understanding"

---

[2] Consistent with the discussion above in Point I.A., the Defendants do not concede that the Plaintiff's exempt status under the FLSA was "lost" simply because Guardsmark *elected* to enhance her already-generous salary with overtime compensation.  In short, Points I and II are not mutually-exclusive bases for awarding the Defendants summary judgment, although if the Court deems Point I dispositive, then Point II need not be reached at all.

between the employer and employee that the fixed salary is straight-time compensation for whatever number of hours is worked in each week; and (3) the amount of the employee's salary never, when divided by the total number of hours worked, dips below the minimum wage.  <u>See</u> 29 C.F.R. §778.114(a).  By way of example, the Department of Labor's Wage and Hour Division offers the illustration of an employee who is paid via the FWW method and earns a salary of $600 per week, designed to cover all of the employee's straight-time hours; <u>see</u> 29 C.F.R. §778.114(b):

> If during the course of 4 weeks this employee works 40, 37.5, 50, and 48 hours, the regular hourly rate of pay in each of these weeks is $15.00, $16.00, $12.00 and $12.50, respectively.  Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due.  For the first week the employee is entitled to be paid $600; for the second week $600; for the third week $660 ($600 plus ten hours at $6.00 [the overtime premium]…); for the fourth week $650 ($600 plus 8 hours at $6.25…).

<u>Id.</u>  The method is typically associated with "employees who do not customarily work a regular schedule of hours and [whose salaries] are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole."   <u>Id.</u> at §778.114(c).  That commentary is well-suited to the conditions of the Plaintiff's employment in the instant case, and—in consideration of the fact that all of the three factors in 29 C.F.R. §778.114(a) are indisputably met, and the wage data for the Plaintiff is quite clear as to what she was paid, and when—leaves no question that even if the Plaintiff were not exempt from the overtime standards of the FLSA, she was properly compensated under the FWW method, received all the overtime to which she was entitled, and cannot therefore prevail on her claims.

**A.      The Plaintiff's Hours Fluctuated From Week To Week.**

It is indisputable that the Plaintiff's hours fluctuated from week to week.  Although there is no particular standard set by the FLSA's regulations as to the amount of variance or unpredictability required—see Flood v. New Hanover County, 125 F.3d 249, 253 (4th Cir. 1997) (plaintiffs whose hours varied in accordance with a fixed, cyclical four-week schedule of 48.3 hours, 56.3 hours, 64.45 hours, and 72.45 hours per week, had "fluctuating" hours that permitted the use of the FWW method)—the weekly timesheets submitted by the Plaintiff reveal non-vacation, non-holiday workweeks whose number of working hours ranged between the mid-forties to a high of 62 (workweek ending August 30, 2008): entirely consistent with what she was informed about the nature of her working hours at the time of her recruitment and hire. SMF at ¶¶5, 32-33 and Ex. E and F.  Far from having a "regular schedule of hours," the Plaintiff's working hours were almost *completely* contingent upon Mr. Lipman's own, ending before 7:00 p.m. in some instances, but at other times lasting well into the evening and occasionally until close to 10:00 p.m. at night (a further measure of the degree to which the Plaintiff's duties were inextricably bound up in assisting Mr. Lipman in his management and oversight of the company, as discussed at length in Point I.C. above).  SMF at Ex. E.  Put plainly, the Plaintiff's work schedule was of a kind that the FWW method of payment evolved to accommodate.

**B.      The Plaintiff And Guardsmark Had A "Clear And Mutual Understanding" Of The Nature Of Her Compensation.**

Because the Plaintiff was able to observe and by her actions indicate an understanding of the nature of her compensation, Guardsmark's payment of her complied with the second requirement (i.e., "clear and mutual understanding") of the FWW method.  Legal authority makes it clear that such a "clear and mutual understanding" does not derive from an employee's

14

ability to comprehend the operation of the FWW formula. "Section 778.114 does not require that the employee knows the hours expected to be worked, that the fixed salary is not [to] be paid for weeks where the employee performs no work, *or any other details of how the FWW is administered*." Samson v. Apollo Resources, Inc., 242 F.3d 629, 636-37 (5th Cir. 2001) (emphasis added) (employer not obligated to explain its overtime methodology to its employee); see also Bailey v. County of Georgetown, 94 F.3d 152, 155-56 (4th Cir. 1996) (employee did not need to understand the means used to compute his overtime).

Rather, the "clear and mutual understanding" analysis extends merely to the issue of whether the employee understands that he or she is paid a fixed salary intended to cover all of his or her hours, even if the number of those hours fluctuates from week to week. See 29 C.F.R. §778.114(c) ("…employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked"); see also Lance v. The Scotts Company, Civ. No. 04-cv-5270, 2005 WL 1785315, at *7 (N.D.Ill. July 21, 2005) (clear and mutual understanding was satisfied where the plaintiff "understood that his hours would fluctuate and that his pay consisted of his base salary, commission and overtime," even though the plaintiff professed not to understand precisely how the overtime formula worked) and Valerio v. Putnam Assoc. Incorporated, 173 F.3d 35, 39-40 (1st Cir. 1999) (it was sufficient that plaintiff understood that she was paid a salary intended to compensate her regardless of potential fluctuations in her weekly hours).

That understanding may be communicated in any number of ways; it is not necessary that an employer and employee commit their understanding to writing. Bailey, supra, 94 F.3d at 156. On the contrary, numerous courts have recognized that where an employee knows his or her salary amount, and accepts it without complaint and in spite of the occurrence of fluctuating

15

hours, the requisite "clear and mutual understanding" should be imputed to the employee. "[T]he existence of such an understanding may be 'based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise'." Mayhew v. Wells, 125 F.3d 216, 219 (4th Cir. 1997) (quoting Monahan v. County of Chesterfield, 95 F.3d 1263, 1281 fn.21 (4th Cir. 1996)) (emphasis added); see also Valerio, 173 F.3d at 38-40 (employee openly admitted understanding that her hours were "8:30 to whenever" and accepted her salary without complaint for nearly a year, signifying her understanding that her salary was intended to cover all of her fluctuating hours); Garcia v. Port Royale Trading Company, 198 F.App'x. 845, 845-46 (11th Cir. 2006) (despite limited understanding of English, plaintiff demonstrated a "clear and mutual understanding" sufficient to uphold use of the FWW method where he knew how much money he was receiving each week, recognized that his hours fluctuated each week, and accepted his pay calculated via the FWW formula for nearly three years).  The United States Department of Labor has weighed in with a similar assessment of the "clear and mutual understanding" requirement: where it was "clear the employer paid the employees a fixed salary for variable hours worked and not on an hourly basis….[and] the employees received and accepted the salary knowing that it covered whatever hours they worked,…the employer's method of computing retroactive payment of overtime complies with the FLSA."  Department of Labor, Wage and Hour Division Opinion Letter FLSA 2009-3 (Jan. 14, 2009) (responding to an employer inquiry about the use of the FWW method to compensate employees for a period of misclassification).

The circumstances compelling a finding of "clear and mutual understanding" in this case go *well* beyond those in any of the cases above.  To begin with, the Plaintiff was told during her interview with Dr. Overman that she was to be a salaried employee and that her work hours

would vary but would typically exceed forty hours per week on average.  SMF at ¶5; Overman

Aff. at ¶8.  Reinforcing this message on the matter of her salary, the Plaintiff's offer letter set

forth an annualized and amount ($110,000) and advised the Plaintiff that it was "payable bi-

weekly."  SMF at Ex. A.  Bi-weekly Earnings Statements provided to the Plaintiff demonstrate

that her weekly base salary of $2,115.38 remained constant throughout every week in which the

Plaintiff performed any amount of work (excepting *pro rata* amounts paid during the Plaintiff's

initial and terminal workweeks, consistent with 29 C.F.R. §541.602(b)(6); see also Department

of Labor, WAGE AND HOUR DIVISION FIELD OPERATIONS HANDBOOK, §32b04b(c)).  SMF at

¶¶25-26 and Ex. H.  Like the plaintiff in <u>Garcia</u>, the Plaintiff accepted this salary, with

accompanying overtime, and in full knowledge of her position's fluctuating hours, *for over three*

*years without complaint*.  These facts *alone* would suffice to demonstrate the requisite "clear and

mutual understanding" needed to apply the FWW method.  However, the Plaintiff's case goes

even further, because the Plaintiff also exchanged emails with Guardsmark's payroll personnel to

inquire about pay-related issues, without ever complaining that her compensation was being

erroneously or improperly computed.  SMF at ¶¶12-18; Ex. C and D.  On at least one of those

occasions—an exchange ending on or about July 22, 2009—the *Plaintiff received a detailed,*

*step-by-step explanation of how her overtime was calculated*: a textbook how-to guide, in

layman's terms, for applying the FWW method to her pay.  Id. at ¶16 and Ex. D.  Put plainly, the

Plaintiff's understanding could not possibly have been more "clear"; and—given that she waited

until the spring of 2012 to dispute it—could not possibly have been more "mutual" as well.  Id.

**C.**   **Under The Fluctuating Work Week Method, The Plaintiff's Hourly Rate Was Never
Less Than The Applicable Minimum Wage.**

The final prong of the FWW method—that the employee's hourly rate never fall below

the minimum wage—is easily met in this instance, and is similarly factually and legally

indisputable by the Plaintiff.  As established above, the Plaintiff's weekly salary amounted to $2,115.38.  Based upon the timesheets that she submitted over the course of her employment, the Plaintiff's maximum number of working hours in any week was approximately 62.  SMF at ¶33; Ex. E and F.  This yields an hourly rate of $34.12, still *far* in excess of the applicable minimum wage rate of $7.25.  See 29 U.S.C. §201(a)(1)(c) and 12 NYCRR §142-2.1(a)(5) (setting applicable minimum hourly wage rates under the FLSA and New York minimum wage orders).

The terms and conditions of the Plaintiff's employment therefore met all the prerequisites for the application of the FWW method.  On top of this, it is undisputed as a matter of fact that the method used by Guardsmark to perform the actual calculations of the Plaintiff's overtime due, were not only in alignment with the formula laid out in the DOL's regulations and in the Wage and Hour Division's Field Operations Handbook: the Company expressly relied on a DOL guidance document—the "Coefficient Table for Computing Extra Half-Time for Overtime"—to make its FWW calculations.  SMF at ¶¶11, 22 and Ex. B.  The Company used this Table to determine the Plaintiff's overtime premium entitlement by multiplying the applicable coefficient (a decimal amount based on number of hours worked) with the Plaintiff's salary.  SMF at ¶22; Ex. B; Mayse Aff. at ¶¶8, 12.  Although the Plaintiff sought clarification about how her overtime was computed, relatively early in her employment, she never, in the span of *more than three years*, contended that her overtime pay was erroneous, or filed a complaint of any kind indicating that she believed her pay to be, whether deliberately or inadvertently, deficient.  SMF at ¶17; Mayse Aff. at ¶14.  It is notable that the Plaintiff's Complaint fails even to assert that Guardsmark's particular method of FWW application was erroneous—not least of all because the undisputed facts in the record demonstrate that it was indeed proper—but rather elects to assert that after three years of receiving overtime in this manner, and nearly nine months after her resignation, the Plaintiff somehow came to the belief that she was entitled to be paid

18

overtime in the traditional "time and a half" method, and not by the FWW at all.  See generally Ex. I.  Under these circumstances, even if the Plaintiff were not exempt from the minimum wage and overtime mandates of the FLSA (and NYLL, discussed in more depth in Points III and IV below), the record is uncontroverted that she was paid all the overtime to which she was due under an acceptable and properly-applied overtime method.  As a result, the Defendants are entitled, as a matter of law, to summary judgment on the Plaintiff's FLSA claim.

## POINT III

### THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE PLAINTIFF'S NYLL CLAIM, BECAUSE THE FLSA AND NYLL ARE FOR ALL RELEVANT PURPOSES IDENTICALLY ANALYZED.

The Plaintiff's NYLL claim is premised on the same set of facts as her FLSA claim. Because of this, and because the NYLL is interpreted (for all purposes relevant to this Motion, in any event) identically with the FLSA, the dismissal of her claim under the FLSA must necessarily entitle the Defendants to the dismissal of her NYLL claim as well.

The New York Minimum Wage Orders (i.e., regulatory provisions) governing the implementation of Article 19 of the NYLL dictate that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in [the FLSA]."  12 NYCRR §142-2.2; see also Krause v. Merrill Lynch, Civ. No. 10-cv-2603; 2011 WL 1453791, at fn.3 (S.D.N.Y., Apr. 13, 2011) (observing that the FLSA and NYLL are "nearly identical" and "are analyzed in the same manner"); Ellis v. Common Wealth Worldwide Chauffeured Transportation of NY, LLC, Civ. No. 10-cv-1741; 2012 WL 1004848, at *6 (E.D.N.Y., Mar. 23, 2012) (granting summary judgment on NYLL claim after granting summary judgment on FLSA claim; after noting neither party had briefed the NYLL claim in their memoranda, court reasoned that the statutes were analyzed in the same way).

The NYLL is also deemed to have adopted the same exemptions as the FLSA with the result that a determination of exemption (or non-exemption) under the Federal statute, will govern the corresponding result under its State counterpart—typically without analysis.  See Zubair v. EnTech Engineering P.C., 808 F.Supp.2d 592, 600 (S.D.N.Y. 2011) (granting plaintiff summary judgment on his NYLL claim after finding him not covered by the "learned professional" exemption under the FLSA); Scholtisek v. Eldre Corp., 697 F.Supp.2d 445, 466-68 (W.D.N.Y. 2010) (in the absence of a definition, construing the term "salary" under the NYLL similarly with the FLSA's "salary basis test" produced a result that "comport[ed] with the…apparent intent that the New York overtime regulations, and particularly the exemptions, be applied and construed in a manner consistent with the analogous provisions under the FLSA") (finding that employees who did not qualify for professional exemption under the FLSA, could not qualify for the exemption under the NYLL either); Anderson v. IKON Office Solutions, Inc., 38 A.D.3d 317, 317 (1st Dep't 2007) (implicitly recognizing applicability of the FWW method of overtime payment to the state regulations implementing New York's own minimum-wage and overtime requirements).

Consequently the Plaintiff's NYLL claim, insofar as it is premised on the same facts as her FLSA claim, should be dismissed pursuant to the same analysis as is set forth at length in Points I and II above.

## POINT IV

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S STATE-LAW CLAIMS.

In addition and in the alternative to the argument raised in Point II above, if the Plaintiff's FLSA claims are dismissed, the court should decline to exercise supplemental jurisdiction over the remaining state claims.  See 28 U.S.C. §1367.  Federal courts have long recognized that

when Federal claims have been dismissed on summary judgment, the subsequent dismissal of

state-law claims on jurisdictional grounds serves the interests of judicial economy and comity.

"In the usual case in which all federal law claims are eliminated before trial, the balance of

factors to be considered under the pendant-jurisdiction doctrine…will point toward declining to

exercise jurisdiction over the remaining state-law claims."   Carnegie-Mellon University v.

Cohill, 484 U.S. 343, 350 fn. 7 (1988) (discussing the Cohill factors to be weighed in deciding to

exercise or decline supplemental jurisdiction); see also Tops Market, Inc. v. Quality Markets,

142 F.3d 90, 103 (2d Cir. 1998) (declining to exercise jurisdiction over state-law claims

following dismissal of Federal ones).  Declining jurisdiction in the context of FLSA actions once

the Federal wage-and-hour claims have been disposed of, is not uncommon practice, even with

respect to identically-analyzed NYLL claims: see, e.g., Bilyou v. Dutchess Beer Distributors,

Inc., 300 F.3d 217, fn.1 (2d Cir. 2002) (observing that district court had declined to exercise

jurisdiction over NYLL claim after dismissal of FLSA claim); see also Day An Zhang v. L.G.

Apparel, Inc., Civ. No. 09-cv-3240; 2011 WL 900183, at fn.1 (E.D.N.Y., Feb. 18, 2011).  In

view of these authorities it is appropriate that to the extent they cannot be dismissed using the

same analysis applied to her FLSA claim, the Plaintiff's state-law claims should not be heard by

this court.

## POINT V

### THE PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED INSOFAR AS SHE WAS AN AT-WILL EMPLOYEE AND ANY CLAIM FOR BREACH IS DUPLICATIVE OF HER STATUTORY CLAIMS.

The Defendants are also entitled to summary judgment with respect to the Plaintiff's

breach of contract claim (added to her Complaint as an apparent afterthought), because the

Plaintiff, as an at-will employee, had no employment agreement with Guardsmark on which to

premise such a claim; and because in any event, her breach of contract claim is merely a common-law mirror image of her statutory claims under the FLSA and NYLL.

"In New York, it is well-settled that 'absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party'." Ellis, supra, 2012 WL 1004848, at *11 (quoting Rooney v. Tyson, 91 N.Y.2d 685, 689 (N.Y. 1998)) (dismissing breach of contract claim brought alongside FLSA and NYLL claims despite plaintiffs' assertion that "Plaintiffs and Defendant had an implied employment contract insofar as the employment relationship is inherently contractual in nature"). Ellis stands clearly for the proposition that—the Plaintiff's conclusory assertion notwithstanding—the employment relationship in New York is inherently *not* contractual in nature; and in this instance the Plaintiff can point to *nothing* that undermines her at-will status. See generally SMF at Ex. I, ¶¶58-60. The Plaintiff's offer letter, signed June 17, 2008, reiterated the at-will nature of her employment ("Nothing herein or elsewhere, nor any oral representation, shall change the nature of your employment from one of employment-at-will between the parties"); and the Plaintiff put an even *further* exclamation point on her at-will status by advising her employer verbally on September 5, 2011 that she was effectively resigning her position without notice. SMF at ¶63 and Ex. A.

More importantly, however, even if the Plaintiff had an employment contract—express or implied—with Guardsmark, her breach of contract claim is simply a redressing of her statutory claims, insofar as it is premised on the same alleged underpayment of overtime and seeks the same relief. "Where an employer violates a statute, the employee's remedy is for violating the statute and is not for breach of contract." Ellis, 2012 WL 1004848 at *11 (citing Fry v. McCall, 945 F.Supp. 655, 667 (S.D.N.Y. 1996) (statutory and constitutional violations give rise to claims under those laws themselves and do not create separate causes of action for breach of contract)); see also Krichman v. J.P. Morgan Chase & Co., Civ. No. 06-cv-15305; 2008 WL 5148769, at *3

(S.D.N.Y. Dec. 8, 2008) (denying motion to dismiss FLSA and NYLL claims but dismissing breach of contract claims premised on the same transactions) ("a plaintiff cannot recover under a contract theory for a defendant's failure to comply with existing statutes") (citing Murray v. Northrop Gruman Information Tech, Inc., 444 F.3d 169, 178 (2d Cir. 2006)).  Like the Ellis and Krichman plaintiffs, the Plaintiff in the instant case offers no additional facts or circumstances to distinguish her breach of contract claim from her FLSA and NYLL claims; rather, her contract claim simply piggybacks those statutory claims without even the pretense of an independent basis.  Accordingly, *even if the Plaintiff's FLSA and NYLL claims are not dismissed* (as in Krichman), the Defendants remain entitled as a matter of law to summary judgment on this claim.

## CONCLUSION

In view of the foregoing, the Plaintiff's claims should be dismissed.  The court is respectfully invited to see the claims for what they are—an afterthought by an ex-employee apparently eager to register her dissatisfaction with her former employment, who apparently found the wage-and-hour litigation forum a convenient one in which to make her unhappy statement.  The Defendants do not dispute that the Plaintiff's job was a demanding one.  But in exchange for performing it, she was well-compensated and played an integral role in aiding the functioning of management of a large company at the very highest levels of its leadership:  the very definition of a "highly-compensated employee" as the applicable statute contemplates the term.  Moreover, even if the Plaintiff were *not* entitled to the exemption afforded by the "highly compensated employee" test, the record demonstrates no issue of material fact as to whether the Plaintiff was properly paid all of the overtime to which she was due under the "fluctuating work week" method of overtime computation.  In view of the absence of factual and legal merit to the

Plaintiff's claims, the Defendants respectfully request that claims be dismissed, together with such other and further relief as the Court in its discretion may deem just and proper.

Dated: February 26, 2013
       Pittsford, New York                              **HARRIS BEACH PLLC**

                                                       s/ Scott D. Piper
                                        Scott D. Piper
                                        Kyle W. Sturgess (admitted *pro hac vice*)
                                        *Attorneys for Defendants*
                                        99 Garnsey Road
                                        Pittsford, New York  14534
                                        (585) 419-8800
                                        (585) 419-8817 (fax)
                                        spiper@harrisbeach.com

TO:     Steven J. Moser, Esq.
           *Attorneys for Plaintiff*
           1 School Street, Suite 303
           Glen Cove, NY 11542
           (516) 671-1150
           (516) 882-5420 (fax)
           sjm@stevenjmoser.com