UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————

ESTHER STEIN,

                    Plaintiff,

                                                    Civ. No. 12-cv-4739 (JPO) (JLC)

        v.

GUARDSMARK, LLC, and
IRA A. LIPMAN, individually,

                    Defendants.

———————————————————————


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**


**HARRIS BEACH PLLC**

Scott D. Piper
Kyle W. Sturgess (*pro hac vice*)
*Attorneys for Defendants*
99 Garnsey Road
Pittsford, New York  14534
(585) 419-8800
spiper@harrisbeach.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

POINT I    THE DEFENDANTS' AFFIDAVITS OFFERED IN SUPPORT OF THEIR MOTION ARE VALID EVIDENCE OF THE PLAINTIFF'S DUTIES ................................................................................ 2

POINT II    THE PLAINTIFF IS SUBJECT TO THE HIGHLY-COMPENSATED EMPLOYEE EXEMPTION ................................................... 3

    A.    The Plaintiff Performed At Least One Administrative Duty ................................ 3

    B.    The Plaintiff Was A Salaried Employee ............................................... 8

POINT III    THE PLAINTIFF WAS PROPERLY PAID ALL DUE OVERTIME COMPENSATION UNDER THE "FLUCTUATING WORK WEEK". ................................................................................... 10

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

Ahern v. County of Nassau, 118 F.3d 118 (2d Cir. 1997) ............................................................. 9

Altemus v. Federal Realty Investment Trust,
      490 F.App'x 532 (4th Cir. 2012) ..................................................................................... 6, 7

Auer v. Robbins, 519 U.S. 452 (1997) ...................................................................................... 9

Ayers v. SGS Control Services, Inc., Civ. No. 03-cv-9077;
      2007 WL 646326 (S.D.N.Y. Feb. 27, 2007)....................................................................... 15

Brumley v. Camin Cargo Control, Inc., Civ. No. 08-cv-1798;
      2010 WL 1644066  (D.N.J. Apr. 22, 2010) ........................................................................ 14

Christopher v. SmithKline Beecham Corp., 132 S.Ct. 2156 (2012)............................................. 4

Conne v. Speedee Cash of Mississippi, Inc.,
      246 F.App'x 849 (5th Cir. 2007) ...................................................................................... 14

Davis v. Friendly Express, Inc., Civ. No. 02-cv-14111;
      2003 WL 21488682 (11th Cir. Feb. 6, 2003) ..................................................................... 14

Deloatch v. Harris Teeter, Inc., 797 F.Supp.2d 48 (D.D.C. 2011) ............................................. 13

Edwards v. City of New York, Civ. No. 08-cv-3134;
      2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011)..................................................................... 15

Epstein v. Kemper Ins. Cos., 210 F.Supp.2d 308 (S.D.N.Y. 2002) ............................................. 3

Garcia v. Port Royale Trading Co., 198 F.App'x 845 (11th Cir. 2006) ...................................... 11

Griffin v. Wake County, 142 F.3d 712 (4th Cir. 1998) ............................................................. 11

Kadden v. VisuaLex, LLC, Civ. No. 11-cv-4892;
      2012 WL 4354781 (S.D.N.Y. Sep. 24, 2012)....................................................................... 4

Kelly v. City of New York, Civ. No. 91-cv-2567;
      2000 WL 1154062 (S.D.N.Y. Aug. 15, 2000)....................................................................... 9

Lance v. Scotts Lawn Service Co., Civ. No. 04-cv-5270;
      2005 U.S. Dist. LEXIS 14949 (N.D.Ill. July 21, 2005)....................................................... 11

Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.,
    Civ. No. 08-cv-0243; 2010 WL 278877 (E.D.Tex. Jan. 20, 2010) ......................................... 10

Mayhew v. Wells, 125 F.3d 216 (4th Cir. 1997) ......................................................... 12

Rockport Co. v. Deer Stags, Inc., 65 F.Supp.2d 189 (S.D.N.Y. 1999) ......................................... 3

Scholtisek v. Elder Corp., 697 F.Supp.2d 445 (W.D.N.Y. 2010)................................................... 9

Seltzer v. Dresdner Kleinwort Wasserstein, Inc.,
    356 F.Supp.2d 288 (S.D.N.Y. 2005)................................................................... 6, 7

Servaas, Inc. v. Republic of Iraq, 686 F.Supp.2d 346 (S.D.N.Y. 2010)....................................... 3

Von Friewalde v. Boeing Aerospace Operations, Inc.,
    339 F.App'x 448 (5th Cir. 2009) ..................................................................... 13

## Other Authorities

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at p. 876 (2002) ...................................... 11

## Regulations

29 C.F.R. § 541.2 ........................................................................................... 4

29 C.F.R. § 541.200 ......................................................................................... 5

29 C.F.R. § 541.203 ......................................................................................... 5

29 C.F.R. § 541.203(a)(2) .................................................................................. 5

29 C.F.R. § 541.601 ......................................................................................... 5

29 C.F.R. § 541.601(c) ...................................................................................... 5

29 C.F.R. § 541.603 ......................................................................................... 9

29 C.F.R. § 778.106 ......................................................................................... 14

69 FED.REG. 22,146 (Apr. 23, 2004) ........................................................................ 5

69 FED.REG. 22,174 (Apr. 23, 2004) ........................................................................ 4

69 FED.REG. 22,178 (Apr. 23, 2004) ........................................................................ 8

**Rules**

Federal Rule of Civil Procedure 56(c)(4) ...................................................................... 2

**Statutes**

29 U.S.C. § 201 ................................................................................................................ 1

New York State Labor Law, Article 19 ........................................................................... 1

**Treatises**

10B Charles Alan Wright & Arthur R. Miller,
  Federal Practice And Procedure § 2738 (3d ed. 2013) ....................................... 3

## PRELIMINARY STATEMENT

Defendants, Guardsmark LLC ("Guardsmark" or the "Company") and Ira A. Lipman, individually ("Mr. Lipman"; collectively with Guardsmark, the "Defendants"), respectfully submit this Reply Memorandum of Law in further support of their pending Motion for Summary Judgment with respect to the claims of Esther Stein (the "Plaintiff") for overtime wages alleged to have been unpaid in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.; and Article 19 of the New York State Labor Law ("NYLL").[1]  The instant papers, together with the Reply Affidavits of Gary Leviton, Jason Mayse, and Dr. Robert Overman, and the Exhibits annexed thereto, are further submitted in response to Plaintiff's papers opposing the aforementioned Motion.

As a preliminary matter, Defendants observe that large portions of Plaintiff's papers are devoted to casting her former employer in as harsh and negative a light as possible by invoking images of a brooding and intimidating workplace where employees' performance could be rendered only by way of "permission slips," lest they be subject to the dictation and filing of "employee apology letters."  Pl. Mem. at fn.1; 18.  Though Plaintiff's depictions of Guardsmark are, in Defendants' view, patent hyperbole, Defendants have made no secret of the fact that Plaintiff's job was a hard one, and that working directly for a man tasked with maintaining a sprawling international security company required time, discipline, and observance of a comprehensive set of nuanced rules and guidelines for the carrying-out of her duties—an unsurprising fact of life in an industry that, by its very nature, relies on adherence to established (and restrictive) practices and procedures.

---

[1] Plaintiff has also asserted a common-law breach of contract claim corresponding to her FLSA and NYLL claims, although it is observed that her papers do not address Defendants' independent arguments for the dismissal of this claim as duplicative of the statutory claims.  See Def. Mem. at 21-23.

This is beside the point, however, because the case before the Court is simply *not* about Plaintiff's perception of her working environment.  It is similarly *not* about the accommodation of her religious practices (much as she attempts to make it so); about whether she felt oppressed by the volume of hours she was required to work; or about whether she felt controlled or micromanaged in that work.  The case is instead about (1) whether Plaintiff was exempt from the overtime requirements of the FLSA by virtue of meeting the salary requirements of the highly compensated employee test, and performing at least *one* administrative duty in the course of her work; and (2) whether, irrespective of her exempt status, Plaintiff was appropriately paid under the "fluctuating work week" method of overtime payment.  It is respectfully submitted that the questions above can be resolved in favor of Defendants on the basis of the record; and the Court, accordingly, is respectfully urged to disregard Plaintiff's thinly-veiled demand that it punish Guardsmark over the mere fact that, in exchange for a six-figure salary (plus overtime), the company demanded much of her.

## ARGUMENT

### POINT I

### THE DEFENDANTS' AFFIDAVITS OFFERED IN SUPPORT OF THEIR MOTION ARE VALID EVIDENCE OF THE PLAINTIFF'S DUTIES.

Plaintiff's papers assert that the Affidavits of Gary Leviton and Dr. Robert Overman, should be disregarded or stricken as lacking "first-hand knowledge of the Plaintiff's regular daily activities."  Pl. Mem. at 14-16.  This argument should be rejected.  The purpose of Federal Rule of Civil Procedure 56(c)(4)'s "personal knowledge requirement" is to screen out evidence that merely asserts ultimate or conclusory facts or conclusions of law, or that is asserted on the basis of "information and belief" rather than some personal familiarity.  FED. R. CIV. P. 56(c)(4); 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2738 (3d

ed. 2013).  Though Plaintiff would apparently have the Rule operate to include only affidavits capable of recounting what she did on a specific date and time, the "personal knowledge" requirement is satisfied in the instant case by the affiants' personal recollections of their observations of and interactions with Plaintiff, and the duties she typically carried out in those contexts, together with the knowledge that Dr. Overman gleaned from discussing Plaintiff's performance issues and interviewing candidates for Plaintiff's position on Mr. Lipman's behalf. Despite the sufficiency of the original affidavits,[2] and the fact that there is no inherent requirement that an affidavit expressly describe how the information contained therein is based upon personal knowledge—see, e.g., Rockport Co. v. Deer Stags, Inc., 65 F.Supp.2d 189, 191-92 (S.D.N.Y. 1999)—Defendants have submitted Reply Affidavits from Messrs. Leviton and Overman more fully describing the bases for their knowledge of Plaintiff's duties, and pointing out the factual inaccuracies in Plaintiff's own affidavit.

## POINT II

### THE PLAINTIFF IS SUBJECT TO THE HIGHLY-COMPENSATED EMPLOYEE EXEMPTION.

#### A.    The Plaintiff Performed At Least One Administrative Duty.

Plaintiff argues, variously, that she was not exempt from the overtime provisions of the FLSA and NYLL by virtue of her status as a "secretary" and because her none of her customary and regular duties rose to the level of an "administrative" duty under the FLSA.

---

[2] Even if the Court were to deem any portions of the original Affidavits inadmissible for lack of personal knowledge (even after consideration of the hereto annexed Reply Affidavits), Plaintiff's suggestion that the Affidavits as a whole should be stricken is inconsistent with the traditional treatment of such material: courts have repeatedly declined to strike affidavits in their entirety and simply elected to ignore those particular sections they consider to be impermissible: see, e.g., Servaas, Inc. v. Republic of Iraq, 686 F.Supp.2d 346, 353 (S.D.N.Y. 2010); Epstein v. Kemper Ins. Cos., 210 F.Supp.2d 308, 313 (S.D.N.Y. 2002).

The repeated use of the term "secretary" like a virtual incantation does not in and of itself pull Plaintiff into the non-exempt camp.  See Pl. Mem. at Pt. I.   The provision that an employee's title is not dispositive of his or her exempt status under the FLSA—typically invoked in cases of suspected employer misclassification, but logically applicable in reverse (see, e.g., Kadden v. VisuaLex, LLC, Civ. No. 11-cv-4892; 2012 WL 4354781, at *10 (S.D.N.Y. Sep. 24, 2012) and 29 C.F.R. § 541.2)—dictates that a determination of Plaintiff's status is drawn from the identification of her duties.

Still, Plaintiff holds up a quote from the Secretary of Labor—issued in conjunction with the promulgation of the regulations concerning the highly-compensated employee exemption (hereinafter for brevity, the "HCE exemption")—discussing the drawing of the income limit "high enough" to exclude, *inter alia*, New York City secretaries, in an apparent bid to avoid the HCE exemption debate by summarily designating her a "secretary" and asserting that on the basis of that designation, she must be excluded from the HCE analysis altogether.  Pl. Mem at 9-10; see also 69 FED.REG. 22,174 (Apr. 23, 2004).  She fails to appreciate that the Secretary's next comment contemplates the possibility that a $100,000 threshold may still "net" a few individuals who would not otherwise qualify for the administrative exemption, but concludes that the overall objectives of the FLSA *would not be defeated by these rare occurrences*.  69 FED.REG. 22,174 (Apr. 23, 2004) (settling on $100,000 as an appropriate threshold); see also Christopher v. SmithKline Beecham Corp., 132 S.Ct. 2156, 2173 (2012) (individuals earning "more than $70,000 per year…are hardly the kind of employees that the FLSA was intended to protect").  Plaintiff's reference to another passage, cautioning against the broad application of the administrative exemption to "secretaries" is unavailing, because it occurs in the context of a

discussion of the traditional exemption test of 29 C.F.R. § 541.203, *not* the highly-compensated employee "short test" of 29 C.F.R. § 541.601.  69 FED.REG. 22,146 (Apr. 23, 2004).

     Plaintiff is *still*, therefore, subject to the HCE exemption—irrespective of her title and/or whether or not *some* of her duties could be deemed "secretarial"—so long as she customarily and regularly performed any *one* duty of an administrative employee (Plaintiff has not taken issue with Defendants' assertion that she earned the requisite *amount* of compensation to qualify for the HCE exemption).  Since Defendants' prior papers have already made clear this performance does *not* include the "exercise of discretion and independent judgment"—see Def. Mem. at 9, and the case authority cited therein—*this leaves only the requirement that Plaintiff perform a duty* consisting of "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers[.]"  29 C.F.R. §§ 541.200, 541.203(a)(2) and 541.601(c).

     The evidence in the record—largely despite Plaintiff's reflexive and highly generalized denials that she did *anything* of consequence in exchange for a six-figure salary, see Pl. Counter-SMF at ¶¶30 and 37—reveals that Plaintiff *did* perform such duties.  Portions of the record (many of which remain undisputed in Plaintiff's Counter Statement of Material Facts) reveal, for example, that Plaintiff provided administrative support such as placing and receiving calls, including maintaining records of unreturned calls and calls for time (SMF at ¶¶34, 43-44); sorting her boss' correspondence, including responding to questions as to which correspondence was urgent or important (SMF at ¶36; Ex. J; and Ex. I at ¶19); maintaining "inventory control sheets" that tracked various categories of documents and a "Cardex" of business contacts (SMF at Ex. J; Overman Aff. at ¶12); handling business-related and personal purchasing for Mr. Lipman and tracking purchasing receipts (SMF at ¶40); keeping various business calendars and

schedules updated (SMF at ¶¶46 and 48); aiding in meeting preparations, including the travel arrangements and scheduling surrounding monthly three-day "President's Meeting[s]" (SMF at ¶¶51-52); operating videoconferencing equipment during meetings (SMF at ¶53); handling confidential and proprietary information (SMF at ¶61); and serving as a point of distillation and relay of information in manageable volume for Mr. Lipman to process (SMF at ¶¶59-60; Overman Aff. at ¶¶14-27; see also Overman Reply Aff. at ¶¶6-8 and Leviton Reply Aff. at ¶¶6-9 and Ex. 1).

These duties mirror many of those performed by exempt administrative assistants in Altemus v. Federal Realty Investment Trust, 490 F.App'x 532, 532-33 (4th Cir. 2012) (including file maintenance; call-screening; calendaring and confidential information-handling), Seltzer v. Dresdner Kleinwort Wasserstein, Inc., 356 F.Supp.2d 288 (S.D.N.Y. 2005), and a labor union president's assistant in a DOL advisory opinion: DOL Wage and Hour Division, Opinion Letter FLSA 2006-23NA (Oct. 26, 2006) (including coordinating and scheduling meetings; providing meeting packets; operating the meetings' "voting system"; maintaining the president's calendar and monitoring phone calls and correspondence; and dictation), which are discussed more extensively in Defendants' prior papers.  Def. Mem. at 7-9.  Indeed, the parallels between the duties involved in the instant case, on the one hand, and those described in Altemus and the DOL's 2006 guidance even more noteworthy because those two instances did not implicate the HCE exemption: in other words, the similar duties referenced here are to be analyzed *without reference to* "independent discretion and judgment."  While Plaintiff was not the "sole" assistant to Mr. Lipman (as was the case in Altemus), she did perform her work *exclusively for* Mr. Lipman who was—notably, as were each of the supervisors in the three instances cited above— the single highest-ranking individual within the Company.

The Altemus and Seltzer decisions, in fact, are on point with respect to more than simply the administrative duties involved.  Altemus lays to rest the notion that because some of Plaintiff's duties were performed for Mr. Lipman personally, she could not still have been performing administrative duty at Guardsmark: in Altemus, the plaintiff's "responsibilities for performing personal work for [her boss] and his family required 75 to 80 percent of her time[,]" including tasks such as planning a personal holiday party, scheduling doctors' appointments, picking up her supervisor's children from school, purchasing theater tickets, and assisting with the coaching of his son's little league baseball team.  Altemus, 490 F.App'x at 533.  Altemus highlights the reality that an administrative duty is not rendered less so simply because a supervisor might "micro-manage[]" or "[take] control of even the most basic decision making" of an employee's duties, as the supervisor in Altemus did—none of which interfered with a finding that the plaintiff performed administrative duties.  Id. at 534, 536-37 (plaintiff also dismissed her duties as "clerical," and lamented that her supervisor "told her on a daily basis which tasks to complete and the order in which to complete them").

Just as importantly, Altemus and Seltzer reinforce the idea that a high salary—while not by itself dispositive of the issue of exemption—is a strong indicator of exempt status that can support a finding of administrative exemption when it is commensurate with the employee's duties.[3]  Id. at 534 ("[Plaintiff's] high salary [of between $84,000 and $86,520 in base pay] itself creates doubt as to whether she falls within the scope of the intended protected class in light of the legislative goals of the FLSA"); Seltzer, 356 F.Supp.2d at 301.  Guardsmark could well have

---

[3] Notably, Plaintiff's salary was *much* higher (on the order of tens of thousands of dollars) than that of assistants to lower-level executives: see Overman Reply Aff. at ¶10; Seltzer, 356 F.Supp.2d at 293 (executive assistant's salary was nearly $50,000 higher than non-exempt assistant); Altemus, 490 F.App'x at 537 ("[T]he fact that Altemus' salary was significantly higher than all other nonexempt administrative assistants…supports a finding of exempt status").

found a switchboard operator or typist for less than $110,000 in base salary per year. Plaintiff's salary underscores the value of the duties she performed—far exceeding the gift-wrapping and desktop-tidying duties that she highlights as if they were the centerpieces of her employment.

**B.    The Plaintiff Was A Salaried Employee.**

Despite admitting the fact that she was expressly told she was salaried (see Stein Aff. at ¶7; see also SMF at Ex. A), Plaintiff asserts that she was *not* in fact salaried, because she was "treated" like an hourly employee—*viz.*, required to be at her work station during particular hours—and because she alleges that, on one occasion, she paid another employee to cover her desk for an hour. Pl. Mem at 11-14; Stein Aff. at ¶¶36-37. Neither approach undermines Plaintiff's salaried status. To begin with, there is *absolutely no prohibition* on an employer requiring exempt, salaried employees to adhere to particular hourly schedules, and/or record time on an hourly basis. See 69 FED.REG. 22,178 (Apr. 23, 2004) ("[E]mployers, without affecting their employees' exempt status, may…require employees to record and track hours [and]…work a specified schedule…[.]") and DOL Wage and Hour Division, Opinion Letter FLSA 2003-5 (July 9, 2003) (exempt employees could be required to input at least 80 hours of working activity per pay period notwithstanding their salaried status); DOL Wage and Hour Division, Opinion Letter FLSA 2004-4NA (May 13, 2004).

Moreover, the claim that Plaintiff once gave a fellow employee $30 to cover her desk while she attended a personal function does not amount to a "policy or practice of making deductions for part-day absences" and completely obliterate a compensation history that shows more than three years of absolutely uniform, unvarying, undocked base-salary payments of $2,115.38 per week. As a preliminary matter, it is indisputable that Plaintiff's pay reflected *no deduction made by Guardsmark* for the date (October 13, 2009) in question: her pay summary

clearly shows that she received her usual biweekly base pay of $4,230.76 on October 23, 2009. SMF at Ex. G.  The "deduction," if any, was Plaintiff's own payment to another employee made so that she could attend to a personal function; and she advances *no* legal authority for the proposition that an employee's volitional act of giving another employee cash to briefly "cover" her duties, somehow translates to the "docking" of pay *by the employer*.

Moreover, even if Plaintiff's own convoluted concept of a "deduction" were adopted in this instance, it remains as a matter of law that *a single instance of an improper deduction does not give rise* to a "policy or practice" of making exemption-destroying deductions from pay as described in Scholtisek v. Elder Corp., 697 F.Supp.2d 445 (W.D.N.Y. 2010).  Scholtisek itself points out that in Auer v. Robbins, 519 U.S. 452 (1997), the Supreme Court assessed when salaried-exempt status is lost by virtue of improper performance-based (whether premised on quantity or quality of work) deductions from salary—or the "significant likelihood" of such deduction[4]—and stated clearly that a "'one-time deduction…under unusual circumstances' is not enough to establish a significant likelihood of such deductions."  Scholtisek, 697 F.Supp.2d at 450 (quoting Auer, 519 U.S. at 462).  This point has been reiterated time and again.  See Ahern v. County of Nassau, 118 F.3d 118, 121 (2d Cir. 1997) ("[O]ne incident of pay docking is insufficient to establish…[a] practice" and lose salaried status); Kelly v. City of New York, Civ. No. 91-cv-2567; 2000 WL 1154062, at *10 (S.D.N.Y. Aug. 15, 2000) (collecting cases).

Here Plaintiff leaves no dispute that what she asserts to have been an improper deduction was in any event a one-time occurrence: in addition to it being the only such "deduction" she is able to describe, she recounts in detail that she was expressly informed by Mr. Lipman that the

---

[4] The court in Scholtisek discussed in depth how the Department of Labor's revised FLSA regulations, effective August 23, 2004, eliminated the analysis of a "significant likelihood" of improper deductions, and focused instead on the actual policy or practice of such deductions. Scholtisek, 697 F.Supp.2d at fn. 5 and 9; see also 29 C.F.R. § 541.603.

*ad hoc* solution of having another employee cover her desk while she attended to a personal function, would be acceptable *only for that day and not in the future*.  Stein Aff. at ¶37.  This forecloses any possibility of an issue of fact as to whether Plaintiff was subject to a policy or practice of partial-day absence-based deductions in the manner that her cited case authority contemplates.  It also leaves the remainder of the record demonstrating uncontrovertibly that Plaintiff's payment history was one of undocked, base-salary payments throughout her tenure.

**POINT III**

**THE PLAINTIFF WAS PROPERLY PAID ALL DUE OVERTIME COMPENSATION UNDER THE "FLUCTUATING WORK WEEK."**

Plaintiff also fails to demonstrate that Defendants did not comply with the requirements of the fluctuating work week ("FWW") method of overtime payment and thereby pay Plaintiff all of the overtime to which she would have been entitled were she a non-exempt employee.  (As an initial matter, Defendants take exception to Plaintiff's implicit suggestion that arguing for Plaintiff's exempt status somehow evidences a failure to properly pay FWW overtime: see Pl. Mem. at 28 ("If Guardsmark had met the requirements of the [FWW] method it would not have devoted its resources in asserting an exemption").  Defendants are not aware of any precedent stating that the mere argument of alternative theories may be used as evidence of the weakness of any particular theory.  To the contrary, see Lawyers Title Ins. Corp. v. Doubletree Partners, L.P., Civ. No. 08-cv-0243; 2010 WL 278877, at *2 (E.D.Tex. Jan. 20, 2010).

Many of Plaintiff's assaults on Defendants' FWW argument can be relatively easily disposed of, including the issue of the fluctuation of Plaintiff's hours.  Defendants observed that the FWW method does not require any particular *degree* of fluctuation to be applicable; merely *some* measure of fluctuation.  There being no apparent statutory or regulatory definition of "fluctuation," Defendants submit that its plain meaning, "A wavering or unsteadiness (as of

10

opinion or prices)," applies here.  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at p. 876 (2002) [definition of "fluctuation"].  Despite Plaintiff's attempt to flip Defendants' observation on its head by suggesting that Plaintiff's hours did not fluctuate *enough*—pointing out that Plaintiff's workweeks often fell into the 50 to 55-hour range—the uncontroverted evidence of her timesheets demonstrates that she did not work a fixed schedule of hours.  Her hours clearly varied; and that is all that is required for the application of the FWW method.[5]  SMF at Ex. E.

Likewise, Plaintiff's "clear and mutual understanding" argument with respect to the application of the FWW casually brushes aside a pile of case authority offered by Defendants on the issue, to simply reassert her original contention that Defendants promised to pay her overtime, but failed to tell her that it would be paid out by the FWW method, undermining the notion of a mutual understanding.  The problem with Plaintiff's argument is that it could not be made any clearer that an employee is *not* owed a description of her employer's overtime methodology to impute a clear and mutual understanding that her salary is intended to cover all of her straight-time hours: she merely needs to (1) know the amount of her salary; and (2) accept that amount, in spite of the occurrence of fluctuating hours.  See, e.g., Garcia v. Port Royale Trading Co., 198 F.App'x 845, 845-46 (11th Cir. 2006); see also Griffin v. Wake County, 142 F.3d 712, 717 (4th Cir. 1998) (FLSA does not require an employer to "hold an employee's hand and specifically tell him or her precisely how the payroll system works") (citation omitted); and Lance v. Scotts Lawn Service Co., Civ. No. 04-cv-5270; 2005 U.S. Dist. LEXIS 14949, at **2-4 (N.D.Ill. July 21, 2005) (Plaintiff understood his base salary remained the same irrespective of his weekly hours).  As observed in Defendants' original papers at 16-17, Plaintiff was hired

---

[5] With respect to Plaintiff's contention that the FWW cannot be applied because she was not compensated on a salary basis, Defendants respectfully refer the Court to their analysis of the salary-basis issue in Point IIB.

pursuant to the terms of an offer letter that stated she would receive a salary, and interviews in which she was told she would work variable hours.  SMF at ¶5 and Ex. A; Overman Aff. at ¶8. Plaintiff's position in this regard is further compromised by the fact that in 2009, she received an explicit explanation of how the FWW method is applied, in an email from Jason Mayse, and never again raised the matter of her overtime payment (at least until three years later, when she apparently decided that she disagreed with Guardsmark's overtime method and brought the instant lawsuit).  SMF at ¶¶14-18.  Like the plaintiff in Mayhew v. Wells, 125 F.3d 216, 219 (4th Cir. 1997), Plaintiff cannot accept a fixed salary in the face of fluctuating hours for years on end and only now, long after the fact, protest that she did not understand the basis of that payment.

Plaintiff asserts—virtually as an afterthought—that Defendants' initial moving papers did not "show their math" with respect to Plaintiff's overtime payments under the FWW method, and offers a spreadsheet purporting to demonstrate that Plaintiff's overtime was systematically underpaid even under the FWW method.  To the extent that it is deemed necessary (given that Defendants furnished each and every one of Plaintiff's weekly timesheets and the DOL's "Coefficient Table," coupled with Jason Mayse's affirmation that he used the Coefficient Table to calculate Plaintiff's overtime entitlement: see generally SMF at Ex. B and Mayse Aff.), Defendants have submitted the Reply Affidavit of Jason Mayse spelling out in detail how Plaintiff's timesheets were used in conjunction with the Coefficient Table to generate an overtime computation, accompanied by a spreadsheet detailing each individual overtime payment rendered to Plaintiff and the corresponding coefficient used to ascertain it.  (Insofar as this spreadsheet suggests a grand total of $5.86 in underpayments to Plaintiff over the course of three years, Defendants observe that this amount is properly disregarded under the *de minimis* doctrine: see, e.g., Von Friewalde v. Boeing Aerospace Operations, Inc., 339 F.App'x 448, 458-

589 (5th Cir. 2009) (FLSA claims may not be rested on an amount of unpaid overtime that is *de minimis* as a matter of law) and Deloatch v. Harris Teeter, Inc., 797 F.Supp.2d 48, 56 (D.D.C. 2011) (courts assessing whether an FLSA claim implicates a *de minimis* amount consider, *inter alia*, the aggregate size of the claim)).

Plaintiff expends considerable effort asserting that the occasional delays in overtime payments to Plaintiff—necessitated by the fact that the payroll system applicable to Plaintiff required her supervisor's signature, followed by the shipment of her hard-copy timesheets to the company's administrative offices in Memphis, where her overtime payments were calculated timesheet-by-timesheet—were improper under the FLSA. Plaintiff's argument in this regard boils down to a belief that since her overtime was not always paid out "reasonably" promptly under her own interpretation of the DOL's guidance on the timing of overtime payments, Defendants should be retroactively stripped of the right to use the FWW method altogether, and forced to provide her with additional overtime compensation to the tune of tens of thousands of dollars in wages, interest, and liquidated damages. (It is very telling that, over the course of three years of employment that included several inquiries to her payroll department about the amount of her overtime, and the method of its calculation, Plaintiff does not appear to have *once* complained about any delay of its payment, or asked why it might have been untimely.)

Defendants have already set forth the bases for the occasional delays in the payment of Plaintiff's overtime entitlement and observe that the relevant regulation in this instance does not impose a particular time limitation upon the payment of overtime (save for the proviso that "[p]ayment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due") and implicitly observes that there are instances in which the computation of overtime is not determinable until after the end of the pay

period in which it was earned (in this case, because Guardsmark required that Plaintiff's timesheet be authorized and then sent to the Company's Memphis offices for the computation of overtime and corresponding arrangement of payment.)  29 C.F.R. § 778.106.

Plaintiff's argument against the FWW must fail, however, even *absent* any consideration of the reasonableness of the occasional delays involved in this case, because there is no relationship between the delay of overtime payments, and the proper application and permissible use of the *FWW method, specifically*.  Past instances in which courts have considered whether defendants "lost" the right to use the FWW method have assessed behaviors that implicated the features of the FWW method particularly: i.e., payment errors or other compliance violations that resulted from the erroneous application of the method.  In Conne v. Speedee Cash of Mississippi, Inc., and Brumley v. Camin Cargo Control, Inc., courts considered the question of whether deductions that were impermissible specifically under the FWW methodology, thereby made it unlawful for the defendants to compute overtime by that method at all.  Conne, supra, 246 F.App'x 849, 850-51 (5th Cir. 2007) (concluding that a salary deduction that was improper under the rules of the FWW did not bar the defendant from using the FWW method altogether); Brumley, Civ. No. 08-cv-1798; 2010 WL 1644066, at **4-5 (D.N.J. Apr. 22, 2010).  Similarly, in Davis v. Friendly Express, Inc., Civ. No. 02-cv-14111; 2003 WL 21488682 (11th Cir. Feb. 6, 2003), the court considered whether a fixed salary that—combined with sufficient hours— occasionally resulted in an hourly rate less than the minimum wage under the FWW method of hourly-rate calculation, stripped the employer of its right to use the FWW and rendered it liable for traditional time-and-a-half payments.  Davis, supra, 2003 WL 21488682, at *2; see also DOL Wage and Hour Administrator Opinion Letter 945 (Feb. 9, 1969) (employer did not lose the right to use FWW method when it resulted in five weeks of insufficient payment out of the year).

Plaintiff's claims in this case are clearly premised on what she alleges to have been the impermissible use of the FWW method to deny her traditional time-and-a-half payments, *not* on the claims that overtime payments were unreasonably delayed—an issue that she injects into the case only now in an effort to cloud the FWW analysis. <u>See generally</u> SMF at Ex. I, ¶¶36-48.  To the extent Plaintiff now attempts to "morph" her original claims into claims premised on the delayed payment of overtime in order to stave off summary judgment, such claims are—as she hints at in her own brief—properly brought in their own right via an amended Complaint, not as a mutation of her original theory of liability.  <u>See</u> <u>Ayers v. SGS Control Services, Inc.</u>, Civ. No. 03-cv-9077; 2007 WL 646326, at \*\*10 (S.D.N.Y. Feb. 27, 2007) (analyzing delayed-payment as a separate claim); <u>Edwards v. City of New York</u>, Civ. No. 08-cv-3134; 2011 WL 3837130, at \*11 (S.D.N.Y. Aug. 29, 2011) (same).

## CONCLUSION

In light of the foregoing, Defendants respectfully renew their request that the Court grant summary judgment with respect to all of Plaintiff's claims for overtime compensation.

Dated: May 14, 2013
      Pittsford, New York

**HARRIS BEACH PLLC**

s/Scott D. Piper
Scott D. Piper
Kyle W. Sturgess (*pro hac vice*)
*Attorneys for Defendants*
99 Garnsey Road
Pittsford, New York  14534
(585) 419-8800
spiper@harrisbeach.com