UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                  :

ESTHER STEIN, *individually and on behalf of all* :
*others similarly situated*,                     :
                            Plaintiffs,   :        12 Civ. 4739 (JPO)
                                  :

                -against-        :       __OPINION AND ORDER__
                                  :

GUARDSMARK, LLC and IRA A. LIPMAN,  :
                        Defendants.  :
                                  :
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

      In this wage-and-hour case, Plaintiff Esther Stein alleges that Defendant Guardsmark,

LLC and its president, Ira Lipman, violated the Fair Labor Standards Act ("FLSA") and certain

state laws by failing to pay her enough overtime.  Defendants seek summary judgment, arguing

that Plaintiff was exempt from the FLSA and, in the alternative, that she was paid all legally

required overtime pursuant to the fluctuating workweek method ("FWW").  For the reasons that

follow, Defendants' motion for summary judgment is granted.

## I.    Standard of Review

      Summary judgment is appropriate in a case where the evidence, viewed in the light most

favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see also Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008).  The moving party bears the

burden of showing that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986).  A fact is "material" only if it will affect the outcome of the suit

under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For there to

be a "genuine" issue about the fact, the evidence must be such "that a reasonable jury could

return a verdict for the nonmoving party." *Id.*  In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party.  *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  Where there is no evidence in the record "from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is proper.  *Catlin v. Sobol*, 93 F.3d 1112, 1116 (2d Cir. 1996).  While the nonmoving party can defeat summary judgment by presenting evidence sufficient to create a genuine issue of material fact, "mere speculation and conjecture [are] insufficient to preclude the granting of the motion."  *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

## II.    Discussion[1]

The FLSA guarantees workers a minimum wage and limits the number of hours in a regular work week.  Passed in the depths of the Great Depression, the Act was intended to ensure a "fair day's pay for a fair day's work."  *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942).  "Under the [FLSA], an employee can only work a maximum of 40 hours in a given week, and if a worker's hours surpass that ceiling, the employer must pay for the additional hours at 'a rate not less than one and one-half times the regular rate at which he is employed.'" *Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 146 (D. Conn. 2012) (quoting 29 U.S.C. § 207(a)); *see also Flood v. New Hanover Cnty.*, 125 F.3d 249, 251 (4th Cir. 1997) ("As a general rule, the FLSA provides that an employer may not employ an employee for a workweek longer than forty hours unless it pays its employee one and one-half times the employee's 'regular rate' for all hours in excess of forty." (citations omitted)).

---

[1] Because summary judgment is granted on the basis of Defendants' FWW argument, the Court assumes for purposes of this discussion that Plaintiff is not exempt from the FLSA.

However, as summarized in a scholarly opinion by Judge Wilken of the Northern District of California, the Supreme Court held in *Missel* that "an employer and employee could legally agree, in certain circumstances, to a compensation arrangement where the employee would be paid a flat weekly rate for fluctuating hours." *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1011 (N.D. Cal. 2009). *Missel* further held that any such agreement "must contain a provision for overtime pay and the wage must be sufficient to satisfy minimum wage requirements and offer a premium of at least 'fifty per cent for the hours actually worked over the statutory maximum.'" *Id.* (quoting *Missel*, 316 U.S. at 581).

In 1968, the Department of Labor ("DOL") promulgated 29 C.F.R. § 778.114, an interpretive rule intended to codify and clarify *Missel*. This DOL rule affirms the validity of the FWW method of payment and imposes limits on its implementation:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

3

29 C.F.R. § 778.114; *see also Costello v. Home Depot USA, Inc.*, No. 11 Civ. 953, 2013 WL 2097422, at *4 (D. Conn. May 13, 2013) (discussing the origins and development of the FWW method of compensation under the FLSA). Because § 778.114 is an interpretive regulation, it is not binding. *See Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977). Nonetheless, "because § 778.114 represents the Secretary of Labor's implementation of the Supreme Court's holding in [*Missel*]," courts have afforded it a measure of deference. *O'Brien v. Town of Agawam*, 350 F.3d 279, 287 n.15 (1st Cir. 2003); *but see Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688, 2013 WL 1087211, at *15 (S.D.N.Y. Mar. 15, 2013) ("Because § 778.114 was issued by the Department of Labor as an interpretive bulletin . . . rather than pursuant to formal notice and comment rulemaking procedures, some courts have declined to afford it deference."); *Hasan*, 896 F. Supp. 2d at 149 ("The DOL issued its guidance without entertaining comments from outside stakeholders, and the rule merits less deference than one that has survived the gauntlet of a more formal process.").

As endorsed by DOL, "[t]he fluctuating workweek method is one of two approved methods in the Department of Labor's FLSA regulations for calculating the regular rate at which [an employee] is employed for overtime purposes," and is "intended to cover cases in which a salaried employee whose hours of work fluctuate from week to week [reaches] a mutual understanding with his employer that he will receive a fixed amount as straight-time pay for whatever hours he is called upon to work in a workweek, whether few or many." *O'Brien*, 350 F.3d at 287 (quotation marks and citations omitted). When the FWW interpretive regulation applies, "the minimum overtime rate required by the FLSA is only half-time (i.e., 50% of the regular rate), rather than time-and-a-half (150%)." *Id.* at 286-87. As a result, and because the FWW method of calculating overtime "is an exception to the normal rights of the employee,"

"the employer bears the burden of proving that all the requirements for applying the method are present." *Dingwall v. Friedman Fisher Associates, P.C.*, 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998) (citation omitted); *see also id.* (explaining that, under the FWW method, "[a] larger number of hours then results in a lower rate of pay").[2]

In this District, Judge Berman has concluded that the FWW "method of payment can be employed when 'five discrete criteria' are satisfied":

> (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week; (3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employer and the employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and (5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of forty (40) during the week.

*Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078, 2007 WL 3171342, at *2 (S.D.N.Y. Oct. 9, 2007).[3] Defendants argue that summary judgment is warranted because they can demonstrate on the basis of undisputed facts that all of these requirements are satisfied.[4]

---

[2] The First Circuit, however, has acknowledged differences of opinion among the courts that have addressed this issue: "The circuits are split on the question whether the employee or the employer bears the burden of proof under § 778.114. *Compare Davis v. Friendly Express, Inc.*, 2003 WL 21488682, at *3 (11th Cir. Feb.6, 2003) (employee bears the burden); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636-37 (5th Cir. 2001) (same), *with Monahan v. County of Chesterfield*, 95 F.3d 1263, 1275 n.12 (4th Cir. 1996) (employer bears the burden)." *O'Brien*, 350 F.3d at 288 n.17; *see also id.* ("We do not decide this issue. Given the undisputed terms of the CBAs, our conclusion is the same regardless of who bears the burden of proof.").

[3] Magistrate Judge Cott has offered a variation on this formulation:

> The rule limits the application of the FWW method to employment agreements under which, *inter alia*, (1) "there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period"; (2) "the amount of the salary is sufficient to provide compensation to the employee at

Before undertaking this analysis, however, preliminary background on the parties may be helpful.  Defendant Guardsmark, LLC ("Guardsmark") specializes in the provision of private security services.  Headquartered in Memphis, Tennessee, Guardsmark employs more than 16,000 people across North America and the United Kingdom.  Defendant Ira A. Lipman founded Guardsmark in 1963 and remains its President, Chief Executive Officer, and Chairman of the Board.  He is a vigorous, hands-on, detail-orientated manger of the company, and works long hours because of a barrage of communications from employees, clients, competitors,

---

> a rate not less than the applicable minimum wage rate for every hour worked"; and (3) the employee "receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay."

*Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688, 2013 WL 1087211, at *15 (S.D.N.Y. Mar. 15, 2013).  Whereas Judge Berman sees five requirements and Magistrate Judge Cott sees three, the First Circuit sees four:

> (1) the employee's hours must fluctuate from week to week;
> (2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);
> (3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and
> (4) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked.

*O'Brien*, 350 F.3d at 288.  For the reasons set forth *infra*, the differences in the elements of a FWW claim as set forth by Judge Berman, Magistrate Cott, and the First Circuit do not affect the analysis in this case.  Under any of these tests, summary judgment is warranted.

[4] This case is different than most FWW cases arising within the Second Circuit.  Most of those cases have involved misclassification, which occurs when employees are erroneously treated as exempt by their employers.  In that context, courts have generally concluded that FWW is not the appropriate measure of damages because it would have been impossible for the parties to have formed a clear and mutual understanding that the FWW method applied and overtime would not have been paid in the requisite contemporaneous manner.  *See, e.g.*, *Costello*, 2013 WL 2097422, at *5; *Hasan*, 896 F. Supp. 2d at 148.  Those considerations do not bear on the analysis in this case.

political figures, charitable institutions, and other entities.  To assist with the demands created by this volume of communication, Lipman maintains a small staff of assistants.  From June 18, 2008 to September 2, 2011, Plaintiff Esther Stein served as Secretary to the President at Guardsmark. She describes the experience as brutally demanding and paints Lipman with a brush reminiscent of Meryl Streep's infamous portrayal of Miranda Priestly in *The Devil Wears Prada*.  After she resigned rather than soldier on in the face of Lipman's many impositions—which ranged from purchasing organic strawberries out of season, to finding copies of particular magazines before they hit the newsstands, to inventorying and cleaning all 92 pairs of Lipman's eyeglasses— Plaintiff concluded that she had been denied the overtime premiums to which she was entitled under federal law.  This lawsuit, alleging FLSA and state law claims, soon followed.

### A.      Plaintiff's Hours Fluctuated Week to Week

An employee's hours fluctuate when "they vary, from workweek to workweek."  *Flood*, 125 F.3d at 253.  Plaintiff acknowledges in her brief that "out of the roughly 150 weeks that Ms. Stein worked for Guardsmark, she worked between 50-55 hours for 108 of those weeks," adding that she actually worked 50-55 hours per week for 130 out of 150 weeks, if weeks in which she took a personal day are accounted for in the analysis.  Thus, even in an ordinary week, Plaintiff's hours fluctuated between 50 and 55 hours—and in somewhere between 20 to 42 of her 150 weeks at Guardsmark, Plaintiff's hours fluctuated beyond this range.  As the Fourth Circuit has noted, the FWW prerequisite of fluctuation does not impose a "requirement of utter unpredictability."  *Id.*; *see also id.* (describing a DOL letter ruling determining that an employer could use the fluctuating workweek method to pay employees who worked alternating forty-three and fifty-one hour workweeks pursuant to a fixed schedule).  Thus, even on the face of Plaintiff's timesheets, her schedule fluctuated enough to satisfy this first FWW requirement.

But these timesheets are not the end of the story.  The undisputed evidence reveals that Plaintiff's hours fluctuated in the sense that they varied from day to day, even if they generally amounted to 50 to 55 hours per week.  *Cf. Roy v. Cnty. of Lexington, S.C.*, 948 F. Supp. 529, 531 (D.S.C. 1996) ("Although the employees were paid a fixed amount every two weeks for 86 regular hours, the actual number of regular hours they worked in those two weeks fluctuated because they worked on a three-day recurring cycle of twenty-four and one-half hours on and forty-seven and one-half hours off.").  For example, Plaintiff describes an occasion where "Mr. Lipman called [her] after 8:00 PM, and told [her] that he might want to purchase boots from a website."  Plaintiff also describes an employment relationship in which she was expected to be available for Lipman's needs whenever he might call.  Joined to the week-to-week fluctuations in Plaintiff's schedule as revealed in her time sheets, this day-to-day fluctuation bolsters the case for concluding that Plaintiff's schedule fluctuated within the relevant meaning of the term.

### B.      Plaintiff Received a Fixed Weekly Salary

Even though she was paid a regular salary each week by Guardsmark regardless of how much or how little she worked, Plaintiff argues that she was not paid on a salary basis.  She offers four arguments in support of this conclusion: (1) she was paid overtime; (2) her hours were tracked; (3) she was expected to remain at her desk while Lipman was in the office; and (4) on a single occasion, Lipman told her that she had to pay a co-worker to fill her role for an hour while she was away.  These facts, taken as true for purposes of summary judgment, do not alter the conclusion that Plaintiff was paid "a fixed salary that [did] not vary with the number of hours worked during the week (excluding overtime premiums)."  *O'Brien*, 350 F.3d at 288.

DOL regulations that define what it means to be paid on a "salary basis" are instructive on this point; indeed, § 778.114 expressly indicates that its compass extends only to employees who are "employed on a salary basis."  Salary basis, in turn, is defined at 29 C.F.R. § 541.602:

8

> An employee will be considered to be paid on a "salary basis"
> within the meaning of these regulations if the employee regularly
> receives each pay period on a weekly, or less frequent basis, a
> predetermined amount constituting all or part of the employee's
> compensation, which amount is not subject to reduction because of
> variations in the quality or quantity of the work performed . . . .

DOL regulations further provide that "[a]n employer who makes improper deductions from

salary shall lose [the right to invoke certain FLSA exemptions] if the facts demonstrate that the

employer did not intend to pay employees on a salary basis."  29 C.F.R. § 541.603(a).  With

respect to this provision, DOL counsels that the following non-exhaustive factors are relevant:

> [T]he number of improper deductions, particularly as compared to
> the number of employee infractions warranting discipline; the time
> period during which the employer made improper deductions; the
> number and geographic location of employees whose salary was
> improperly reduced; the number and geographic location of
> managers responsible for taking the improper deductions; and
> whether the employer has a clearly communicated policy
> permitting or prohibiting improper deductions.

*Id.*

Plaintiff's argument based on receipt of overtime does not succeed because the payment

of overtime does not compromise a finding that an employee was paid on a "salary basis."  *See*

29 C.F.R. § 541.604(a) ("An employer may provide an exempt employee with additional

compensation without losing the exemption or violating the salary basis requirement, if the

employment arrangement also includes a guarantee of at least the minimum weekly-required

amount paid on a salary basis.").  "Applying this regulation, courts have consistently held that an

employee's receipt of additional amounts, *including overtime*, above his predetermined base

compensation does not destroy the employee's otherwise valid salary status."  *Wright v. Aargo*

*Sec. Servs., Inc.*, No. 99 Civ. 9115, 2001 WL 91705, *5 (S.D.N.Y. Feb. 2, 2001) (emphasis

added).  Even more squarely relevant to this case, the First Circuit has described the FWW salary

basis requirement as one that "exclude[es] overtime premiums," *O'Brien*, 350 F.3d at 288, an

assessment echoed by Magistrate Judge Cott in his FWW analysis, *see Martinez*, 2013 WL 1087211, at *15.

Nor can Plaintiff prevail on this point by sole virtue of the facts that she was obliged to record her hours and stay at her desk. As the Secretary of Labor has observed, "employers, without affecting their employees' exempt status [including their status as a salaried employee], may take deductions from accrued leave accounts; may require exempt employees to record and track hours; may require exempt employees to work a specified schedule; and may implement across-the-board changes in schedule under certain circumstances." *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122-01 (discussing Section 541.602(b)). In light of this guidance, and the absence of case law in support of the proposition that forcing an employee to track her hours renders her an hourly rather than a salaried employee, it cannot be said that this feature of Plaintiff's obligations at Guardsmark disqualified her from the status of "salaried employee."

Plaintiff's strongest argument arises from an incident on October 13, 2009:

> I asked Mr. Lipman if I could leave for my religious meeting at 6:15 PM . . . . I suggested that I could wait until up to 7:00 PM to answer the phones. Mr. Lipman said "I have a solution for today. Mr. Bush will cover your desk for one hour only when you are gone but you have to pay him for that hour. I am not paying him to stand and work overtime just because you are leaving early. By the way, this is not a permanent solution but I will accept this for today only."

In Plaintiff's view, Lipman thereby "communicated that [she] was an hourly employee, the rank and file, and that if [she] chose to work fewer hours than he desired, [she] would be penalized."

However, although this incident is styled as illustrative, Plaintiff does not indicate any other comparable example and therefore this incident is all that can be considered on a summary judgment motion. In support of her argument, Plaintiff relies principally on a Western District of

New York case, *Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445, 453 (W.D.N.Y. 2010).  There, the plaintiffs argued that "the undisputed evidence establishes that from 1998 up until 2004, [the defendant] engaged in an actual practice of docking the salaries of exempt employees for partial day absences.  In other words, if an ostensibly salaried employee missed part of a day, that employee was not paid for the time that he was absent."  *Id.* at 451.  Reviewing the evidence in *Scholtisek*, Judge Larimer concluded that there was not a genuine dispute of material fact regarding the existence of a sustained policy whereby the defendant docked salaries for partial day absences.  *Id.* at 452-53 ("In light of this testimony, I am not persuaded by Eldre's contention that there are genuine issues of fact concerning whether there was any policy or practice with respect to partial day deductions . . . The evidence establishes as a matter of law that there was an actual practice of making such deductions.").  Having found a policy and practice, Judge Larimer emphasized that the fact "[t]hat these deductions may have been infrequent does not mean that there was no actual practice in that regard, or that the deductions were the result of some mistake or inadvertence."  *Id.* at 453.

The existence of an actual policy on the part of the employer was thus critical to Judge Larimer's conclusion—and for good reason, as DOL regulations provide that "[a]n employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis," and DOL has advised courts to consider "whether an employer has an actual practice of making improper deductions." 29 C.F.R. § 541.603(a) (emphasis added).  Indeed, the Secretary of Labor noted in a statement accompanying promulgation of the current version of this rule that "[w]e have modified the first two sentences of subsection (a) to better clarify that the effect of improper deductions depends upon whether the facts demonstrate that the employer intended to pay employees on a salary basis, and to substitute the phrase 'actual practice' of making improper deductions for the

'pattern and practice' language in proposed subsection (a)."  *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122-01.  The Secretary of Labor referred in this statement to the Second Circuit's opinion in *Yourman v. Giuliani*, 229 F.3d 124 (2d Cir. 2000), which explained that "in determining what constitutes an 'actual practice' of pay deductions, we bear in mind the object of the inquiry: whether the employer's practices reflect an 'objective intention' to pay its employees on a salaried basis," *id.* at 130.  It is also relevant that courts have looked skeptically on single-incident docking of pay as proof that an employer did not intend to pay an employee on a salary basis.  *See, e.g.*, *Kelly v. City of New York*, No. 91 Civ. 2567, 2000 WL 1154062, at *10 (S.D.N.Y. Aug. 15, 2000), *adhered to on reconsideration*, No. 91 Civ. 2567, 2001 WL 1132017 (S.D.N.Y. Sept. 24, 2001), *aff'd sub nom. Abramo v. City of New York*, 54 F. App'x 708 (2d Cir. 2003) ("While it is clear that one incident is insufficient to create an actual practice, it appears that there is no certain number or percentage that indicates the existence of an actual practice."); *see also Ahern v. Cnty. of Nassau*, 118 F.3d 118, 121 (2d Cir. 1997).

Here, even reading all facts in the light most favorable to Plaintiff and accepting her account of the October 13 incident as the truth, Plaintiff falls short of demonstrating that she was not paid on a salary basis.  She does not allege that Guardsmark docked her pay; to the contrary, her pay slip for that week shows that she was paid a full salary by the company.  Nor does this incident support the finding of an "actual practice" under 29 C.F.R. § 541.603(a), since it occurred only once and in a single office, involved a single executive (albeit the CEO), dealt with a single employee, and there was no company policy at issue.  Further, by Plaintiff's account, Lipman said he would "accept this for today only."  And because Plaintiff describes only a single incident, there is nothing from which to infer any sort of broader policy.

12

Even taking all the facts together and reading them in a light that flatters Plaintiff, no reasonable juror could conclude on the basis of this summary judgment record that Plaintiff was not paid on a salary basis.  Accordingly, this requirement of FWW is satisfied.

### C.     The Fixed Amount of Plaintiff's Salary Provided Compensation At a Rate Not Less Than the Legal Minimum Wage

As Plaintiff admits, this requirement is satisfied here because Plaintiff's salary was substantially higher than the applicable minimum wage laws required.  It is undisputed that Plaintiff was compensated with a salary of $110,000 per year.

### D.     Plaintiff and Guardsmark Had a Clear Mutual Understanding That Plaintiff Was To Be Paid a Fixed Salary Regardless of the Number of Hours Worked

Section 778.114 requires "a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period."  "This meeting-of-the-minds usually is memorialized in writing at the outset of the employment relationship."  *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 894 (E.D. Tex. 1997) (citations omitted).  However, courts have recognized that a clear and mutual understanding may be shown through examination of the employment agreement and the employee's actions.  *See, e.g.*, *Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997) ("[T]he existence of such an understanding may be based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise." (internal quotation marks and citations omitted)); *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1275 n.12 (4th Cir. 1996) ("[W]e believe that in absence of a written contract, an employer can also demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures."); *Cash*, 2 F. Supp. 2d at 894.  Thus, courts have rejected the requirement that the terms of a FWW overtime scheme be

explained to the employee in writing at any point in the employment relationship. *See Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996) ("Nor do the regulation and the FLSA in any way indicate that an employer must secure from its employees written acknowledgements indicating that the employees' pay plan has been explained to them.").

Moreover, courts have generally stuck closely to the text of the regulation, which sets forth in clear terms what the parties must clearly and mutually understand: "that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." *Id.* This rule does not require an understanding of how the FWW method works or that overtime will be paid according to this method. Thus, many courts have deemed it irrelevant that an employee did not actually understand the full details of how her employer's FWW program operated. *See, e.g.*, *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 637 (5th Cir. 2001) ("Section 778.114 does not require that the employee know the hours expected to be worked, that the fixed salary is not [to] be paid for weeks where the employee performs no work, or any other details of how the FWW is administered." (citation omitted)); *Valerio v. Putnam Associates Inc.*, 173 F.3d 35, 40 (1st Cir. 1999) ("Because the parties initially agreed that she would not receive any additional payments for overtime hours, no agreement regarding calculation of overtime existed. But the regulation calls for no such enlarged understanding . . . The parties must only have reached a 'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not."); *Bailey*, 94 F.3d at 156 ("Neither the regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated."); *Griffin*, 142 F.3d at 716 ("[T]his prong of section 778.114 only requires employees to understand the essential feature of the fluctuating workweek plan."); *Lance v. Scotts Co.*, No. 04 Civ. 5270, 2005 WL 1785315, at *7 (N.D. Ill. July 21, 2005) ("Clearly, the record is replete with evidence

that supports Plaintiff's contention that he did not understand how his pay was calculated.  At his deposition, Plaintiff stated repeatedly that, while he understood that his hours would fluctuate and that his pay consisted of his base salary, commission and overtime, he never understood how the formula for calculating his pay worked.  But the law requires no such understanding.").

This position has been confirmed by DOL.  In Wage and Hour Division Opinion Letter FLSA 2009-3 (Jan. 14, 2009), DOL reaffirmed a 1973 Opinion Letter's statement that:

> An agreement or understanding need not be in writing in order to validate the application of the fluctuating workweek method of paying overtime.  Where an employee continues to work and accept payment of a salary for all hours of work, her acceptance of payment of the salary will validate the fluctuating workweek method of compensation as to her employment.

The 2009 Opinion Letter added that "the Department's regulations do not require that the 'clear and mutual understanding' extend to the method used to calculate the overtime pay.  Rather, 29 C.F.R. § 778.114 only requires that the employees have a 'clear and mutual understanding that they would be paid on a salary basis for all hours worked.'" (citations omitted).

As applied here, these legal standards compel the conclusion that there did exist the requisite clear mutual understanding between Plaintiff and Guardsmark.  Plaintiff states that she was told in her group interview with Overman that she would be "paid a salary 'plus overtime'" and that this statement was echoed by Shay Kearney during orientation.  She reports that she was "never told that [Guardsmark] intended on using the [FWW]," "was never informed being hired that [she] would have to work extensive hours," and "did not have a full grasp of this method of calculating overtime until it was explained to [her] by [her] attorney."  Plaintiff would not have accepted employment with Guardsmark if they had told her about their overtime methodology. It is undisputed that Plaintiff received an Earning Statement for each pay period.

Ramona Martin, Vice President, Human Resources Manager for Defendant Guardsmark, acknowledges that "the methodology behind the calculation of overtime wages is not typically addressed in employee orientation sessions."  Martin adds, however, that "employees are free to direct questions about their pay and pay practices to the company's payroll personnel (myself included), and the Plaintiff appears to have contacted Guardsmark's payroll department, concerning her pay, multiple times in the course of her employment."  In a similar vein, Robert Overman, Vice President, Manager Human Resources for Guardsmark, reports that during the interview that led to Plaintiff's being hired, "she was told . . . that she would be expected to be available to work varying hours that would sometimes extend well beyond 'normal' business hours."  He adds that "it was intended that the company would pay the Plaintiff for time worked in excess of forty hours per week in accordance with the 'fluctuating work week' method," though he admits that "I do not recall our group interview with the Plaintiff addressing the specifics of this compensation arrangement."  He does state that "the Plaintiff was, however, told that she was to be salaried in her position."

Separate from this affidavit testimony, the record also includes other evidence that sheds light on the parties' understanding.  First, the offer letter signed by Plaintiff stated that her "base salary will be at the rate of $110,000 per year, payable bi-weekly."  Second, the parties do not dispute the fact that, during her tenure at Guardsmark, Plaintiff never submitted any complaints about the method by which her overtime was calculated.  Third, Plaintiff exchanged e-mails with a Guardsmark employee named Scott Thompson in which he explained how her salary had been determined from June 18, 2008 to July 19, 2008.  That e-mail laid out in detail the method by which her total earnings were determined.  Fourth, in July 2009, Plaintiff requested information from Jason B. Mayse, Guardsmark's Payroll Manager, about the method by which her salary and overtime were calculated.  In his reply e-mail, Mayse explained:

> The ot is calculated on a per week basis.  To calculate your ot for a particular week, divide your bi-weekly rate by 2 to get a weekly rate.  Divide your weekly rate by the number of hours worked during the week in question to get a [sic] hourly rate.  Divide the hourly rate by 2 to get a half-time rate.  Multiple the half time rate by the number of hours worked during the week over 40.  That total will be your ot for the particular week.

Finally, Mayse has submitted an affidavit in which he describes how Guardsmark calculates overtime under the FWW method, noting that Guardsmark relies on the "Coefficient Table for Computing Extra Half-Time for Overtime" published by DOL's Wage and Hour Division.

Taken together, this evidence leaves no room for doubt about the existence of a clear and mutual understanding that Plaintiff's "fixed salary [was] compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period."  There is no record evidence indicating that Plaintiff was under the impression that her base salary—separate from overtime premiums—would fluctuate based on the number of hours she worked.  To the contrary, Plaintiff indisputably understood that she would be paid a salary, plus overtime premiums, for all hours worked.  She was told as much in her interview, her offer letter confirmed this arrangement, her Earning Statements reflected it, and her communication with Thompson and Mayse afforded even greater detail about its inner workings.  This is enough to satisfy § 778.114.  *See Valerio*, 173 F.3d at 40.

Plaintiff retorts that she did not know how the FWW method works, how her overtime would be calculated, or how many hours she would work during her tenure at Guardsmark.  Even crediting her claim of confusion—a claim undercut even on a summary judgment record by the Thompson and Mayse e-mails—Plaintiff's argument cannot succeed because a clear and mutual understanding of these facets of the employer-employee relationship is not required by § 778.114 or applicable precedent.  *See, e.g.*, *Samson*, 242 F.3d at 637; *Bailey*, 94 F.3d at 156.  Further, to

the extent that her group interview and the offer letter did not offer sufficient clarity about her fixed salary arrangement, her subsequent e-mails with Thompson and Mayse, her lack of complaints, and her receipt of regular Earning Statements more than sufficed.  *See, e.g.*, *Mayhew*, 125 F.3d at 219; *Monahan*, 95 F.3d at 1275 n.12; *Cash*, 2 F. Supp. 2d at 894.

      **E.**      **Plaintiff Received A 50% Overtime Premium In Addition To The Fixed Weekly Salary For All Hours Worked In Excess Of 40 Each Week**

The final question is whether Plaintiff did, in fact, receive overtime premiums that satisfy the mechanics of the FWW method.  In other words, did she actually "receive a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of forty (40) during the week."  *Ayers*, 2007 WL 3171342, at *2; *see also Martinez*, 2013 WL 1087211, at *15 (requiring that the employee "receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay").

The Mayse Affidavit describes how Guardsmark calculates overtime:

> Under this method, an employee is paid a salary that is intended to compensate him or her for all of the "straight time" worked during the week, whether he or she works for a few hours, a "normal" 40-hour workweek, or more than 40 hours.  Once the number of hours worked during the week is known, the employee's salary is divided by that number of hours to determine what his or her hourly rate for the week is.
>
> When the hourly rate has been calculated, it is then divided by half and multiplied by the number of overtime hours (i.e., hours over forty) that the employee recorded for the week.  The resulting figure is the overtime premium that is due to the employee along with his or her salary.

Mayse explains that Guardsmark relies on the "Coefficient Table for Computing Extra Half-Time for Overtime" published by the DOL Wage and Hour Division, and states that Guardsmark opted to pay Plaintiff overtime under this FWW method.  Mayse reports that his department applied Guardsmark's FWW "formula to the Plaintiff's pay for each week in which she worked

more than forty hours to determine what the Plaintiff was due in overtime," and that Plaintiff

"received all of the overtime pay to which she was entitled under this method of calculation."

Plaintiff argues that the Mayse Affidavit does not suffice because it does not provide a

comprehensive, week-by-week analysis of Plaintiff's overtime payment.  Rather, it describes the

FWW method employed by Guardsmark and affirms that this method was applied to Plaintiff's

salary.  In Plaintiff's view, this evidence does not suffice to prove the absence of any genuine

dispute of fact at the summary judgment stage.  Plaintiff has also produced a spreadsheet that,

according to Plaintiff, "show[s] that the plaintiff was not paid properly using the FWW method,

and instead was often shorted."  Plaintiff has not, however, actually demonstrated or described

any of the calculations upon which it relied to generate this spreadsheet and has not called into

question the FWW methodology described in the Mayse affidavit.

In response to Plaintiff's opposition, Mayse filed a Reply Affidavit (the "Mayse Reply"),

to which he attached a spreadsheet reflecting the calculations performed for each week of

Plaintiff's employment.  This reply affidavit also provides greater detail about how Mayse and

his department used the DOL coefficient table and calculated Plaintiff's overtime each pay

cycle.[5]  Planitiff, in turn, filed a sur-reply charging that Mayse listed only the amounts due to

Plaintiff—rather than "actual payments"—and that there is a $1,202.54 discrepancy between the

amount of overtime that Plaintiff received ($35,391.94) and the amount Mayse indicates she was

owed ($36,594.48).  Not to be outdone, Defendants filed a sur-sur-reply affidavit by Martin, who

explained the discrepancy by observing that $1,201.54 in overtime was, in fact, paid to Plaintiff

on August 12, 2011—a fact not immediately apparent on the face of the payroll summary relied

upon by the parties because the base salary and overtime paid to Plaintiff for that pay period had

---

[5] Mayse acknowledges a discrepancy of $5.85 over three years, but this discrepancy is *de minimis* and, standing alone, could not support a claim for damages under the FLSA.  *Cf. Von Friewalde v. Boeing Aerospace Operations, Inc*., 339 F. App'x 448, 458 (5th Cir. 2009).

been consolidated in the "Rate" column of the document (rather than the "OT Earn" column). Martin adds in her affidavit that Plaintiff's "apparent misinterpretation of the payroll records furnished by the Defendants does not undermine the veracity of Mr. Mayse's calculations, which I have reviewed and consider accurate."

The Court has carefully reviewed all of these documents and affidavits, and concludes that Plaintiff has failed to identify any genuine dispute of material fact as to whether she was properly compensated under the FWW method.  In other words, Plaintiff did, in fact, receive a 50% overtime premium in addition to her fixed weekly salary for all hours worked in excess of 40 during her tenure at Guardsmark.  Defendants have provided all of Plaintiff's weekly timesheets, the DOL Coefficient Table, numerous affidavits from Mayse and Martin, and a spreadsheet detailing each individual overtime payment rendered to Plaintiff, and Plaintiff has failed to offer record evidence that could lead any reasonable juror to conclude that she was not actually paid all of the overtime to which she was entitled under Guardsmark's FWW scheme (the methodology of which is not disputed by the parties or challenged by Plaintiff).

### F.    Conclusion: Summary Judgment is Warranted on FLSA Claims

Even assuming that Plaintiff was not exempt from the FLSA pursuant to its highly compensated employee exemption, Defendants are entitled to summary judgment because they paid Plaintiff all overtime to which she was entitled under the FLSA.  Specifically, Defendants paid Plaintiff all due overtime premiums pursuant to a FLSA-compliant FWW methodology.[6]

---

[6] Plaintiff also alleges a claim pursuant to New York Labor Law.  This claim is premised on the same facts as Plaintiff's FLSA claim and the parties have not independently briefed or addressed the FLSA and NYLL claims.  Because the NYLL is "nearly identical to FLSA" for purposes of the analysis in this case, *see Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 10 Civ. 2603, 2011 WL 1453791, at *5 n.3 (S.D.N.Y. Apr. 13, 2011) (citation omitted), and in light of the fact that the parties have treated the two claims as one, *see Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC*, No. 10 Civ. 1741, 2012 WL 1004848, at *6 (E.D.N.Y. Mar. 23, 2012), summary judgment is warranted as to Plaintiff's NYLL claim for the

### G.      Plaintiff's State Law Breach of Contract Claim

In her Third Cause of Action, Plaintiff alleges that she "and Defendants had an implied employment contract insofar as the employment relationship is inherently contractual in nature," and that "[b]y failing to pay Plaintiff for all time worked and/or at her proper overtime rate, Defendants breached their contract of employment with Plaintiff."

"In New York, it is well-settled that absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC*, No. 10 Civ. 1741, 2012 WL 1004848, at *11 (E.D.N.Y. Mar. 23, 2012) (citing *Rooney v. Tyson*, 91 N.Y.2d 685, 689 (1998) (quotation marks and alterations omitted)).  Further, the offer letter that Plaintiff signed on June 17, 2008 expressly provided that "[n]othing herein or elsewhere, nor any oral representation, shall change the nature of your employment from one of employment-at-will between the parties."  Plaintiff does not identify any contract provision, or any feature of the at-will employment relationship, that Defendants violated by employing the FWW method of overtime compensation.  Rather, Plaintiff vaguely suggests that in promising to pay Plaintiff salary "plus overtime," Defendants promised a certain kind of overtime "as that term is commonly understood" and thereby breached their contract with Plaintiff by using an FWW method.  Plaintiff does not cite any legal authority to support this argument.

This claim cannot survive summary judgment.  As an at-will employee who cannot point to any express contract provision governing overtime, Plaintiff can prevail only if she can show a

---

same reasons set forth above as to Plaintiff's FLSA claims.  *Cf.* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 [,] of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended"); *Anderson v. Ikon Office Solutions, Inc.*, 38 A.D.3d 317, 317 (2007) (impliedly recognizing that the NYLL tracks the FLSA with respect to FWW analysis).

genuine dispute of material fact as to the existence of a contract implied in fact.  Judge Karas has

recently summarized the New York doctrine of implied-in-fact contracts:

> [A]n implied-in-fact contract arises when the agreement and
> promise have simply not been expressed in words, but a court may
> justifiably infer that the promise would have been explicitly made,
> had attention been drawn to it.   An implied-in-fact contract
> requires such elements as consideration, mutual assent, legal
> capacity and legal subject matter.   In determining whether the
> parties' conduct is consistent with the existence of a binding
> contract, it is necessary that the totality of all acts of the parties,
> their relationship and their objectives be considered.   Under settled
> law, a contract will not be found to have been formed if it is 'not
> reasonably certain in its material terms.

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 359 (S.D.N.Y.

2012) (quotations and citations omitted).

      Here, even on a summary judgment record, Plaintiff cannot demonstrate "mutual

consent."  The first difficulty for her argument is that, even if she genuinely believed that

overtime meant something other than FWW overtime, no evidence supports the conclusion that

anyone at Guardsmark was also under that impression.  To the contrary, several of the affidavits

filed by Defendants indicate an understanding that Plaintiff would be paid by means of the

Guardsmark-standard FWW overtime method.  The second difficulty is that Plaintiff's own

actions, notably her lack of complaint even after receiving detailed information about the method

by which her overtime was calculated, suggests that she did not have any particular expectations

about what kind of overtime she would receive from Guardsmark.  Taken together, these facts

more than suffice to defeat Plaintiff's claim that Defendants breached some sort of implied-in-

fact contract governing overtime when they used an FWW scheme.  Because no such contract

existed, Defendants could not have breached it and summary judgment is warranted.

### H.     Leave to Amend

Plaintiff seeks leave to amend her complaint so that she can add a claim for delayed payment under the FLSA.  *See* 29 C.F.R. § 778.106; *see also Edwards v. City of New York*, No. 08 Civ. 3134, 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011); *Ayers*, 2007 WL 646326, at *7.

This request is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires."  As Judge Engelmayer has observed, "[t]he Supreme Court has directed courts to grant leave to amend under Rule 15 in the absence of factors 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Themis Capital, LLC v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2013 WL 1687198, at *3 (S.D.N.Y. Apr. 18, 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "In determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993).

Plaintiff's request for leave to amend, asserted in a solitary footnote and then reiterated at oral argument, implicates the Supreme Court's warnings against dilatory motive and prejudice.  This case was filed over a year ago.  The parties have undertaken (and completed) significant discovery and litigated the case in reliance on Plaintiff's representations about the nature and scope of her claims.  They have also invested unusually substantial resources into briefing this summary judgment motion.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d

Cir. 2007) ("Plaintiffs sought to amend their complaint after an inordinate delay.  By that time, discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint.  In light of this record, we conclude that the district court did not exceed its discretion in denying plaintiffs' leave to amend."); *In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*, No. 11 Md. 2213, 2013 WL 1100770, at *6 (S.D.N.Y. Mar. 18, 2013) (citation omitted) ("[L]eave to amend a complaint should generally be denied when a motion to amend is 'filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier.'" (citation omitted)).

Allowing Plaintiff to amend her complaint with a delayed payment claim would require the parties to undertake further discovery and, presumably, litigate another summary judgment motion (or proceed to trial).  It would thereby force Defendants to expand significant additional resources and delay the resolution of this dispute—notwithstanding the fact that Plaintiff either knew or should have known at the outset about all facts relevant to her proposed new claim, and offers no justification for her failure to allege it in the Complaint.  *See Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) ("[T]he Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.").  Accordingly, Plaintiff's request for leave to amend at this late stage in the litigation is denied.

**III.    Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motion entry at Dkt. No. 26 and to close this case.


SO ORDERED.


Dated: New York, New York
       July 23, 2013

_____
J. PAUL OETKEN
United States District Judge